Dowzelot, et al. v. Rawlings.

EUGENE DOWZELOT, *et al.*, Respondents, *vs.* CHARLES RAWLINGS, Appellant.

1. *Partnership—Dissolution—Notice of, when necessary—Member suffering name to remain in firm.*—As to persons who have had no previous dealings with or knowledge of a firm, or of those who composed it, no notice of its dissolution is necessary, in order to prevent liability in consequence of subsequent debts or engagements from attaching to the partner who has retired. If, however, a former partner suffers his name to appear as still belonging to a firm from which he has retired, he will be held liable to any one, who, by his conduct in this particular, has been misled into giving credit to the firm. And this will be the case whether notice be given by publication or not.

2. *Pleading—Admissions in, may be used in other suit, etc.*—Admissions contained in a pleading may be used against the party in another suit; and this, wholly regardless of the question, whether the person himself was in fact cognizant of the pleading. The act of the attorney in such case will be held to be the act of the party.

3. *Partnership—Declarations of members will bind firm, when.*—While a partnership continues the declarations of either of the partners made in respect to the business of the firm will bind it. But this power ceases with the dissolution.

4. *Jury, additional instructions to.*—It is not error to give the jury additional instructions, when, after returning, they report their inability to agree.

*Appeal from Audrain Circuit Court.*

*Forrist & Ladd*, for Appellant.

*Gordon & McIlhany with E. B. Sherzer*, for Respondents.

SHERWOOD, Judge, delivered the opinion of the court.

The plaintiffs were commission merchants in the city of St. Louis. The defendant, Rawlings, and one Pennison were partners in baling and shipping hay at Centralia, Mo., in the latter part of 1871, and the first part of 1872.

They had no sign erected at their place of business. No notice was published announcing the dissolution of the firm; and the time when such dissolution occurred is not clear. There was a tendency in the evidence to show that this event occurred on the 20th day of February, 1872, and there was also evidence in conflict with this, and tending to show that such dissolution did not occur until a later period. Pennison came down to St. Louis about the 26th or 27th of February, 1872, and applied to plaintiff's firm for an advance on three cars of hay, stating that he and Rawlings were partners, and that the most of the hay would be shipped next day, and the residue in a few days thereafter.

58 75
38a 455

58 75
40a 27
41a 254

58 75
102 97

58 75
49a 586

58 75
118 339

58 75
125 407

58 75
68a 423

58 75
141 464
143 659

58 75
80a 636

58 75
81a 175

There had been no previous acquaintance or dealings between the parties; but one of plaintiff's firm testified to having before this, seen hay in cars at the N. M. R. R. depot, covered with tarpaulin, marked "Pennison & Rawlings," and that hay is usually covered in that way, and marked with the name of the shipper.

Plaintiffs advanced the sum of $350 by check, in favor of Pennison and Rawlings. The hay was never shipped nor the money refunded.

1st.—As to persons who have had no previous dealings with or knowledge of the firm, or of those who composed it, no notice of its dissolution is necessary in order to prevent liability in consequence of subsequent debts or engagements, from attaching to the partner who has retired.

The object in giving notice, is to remove the impression which has been created on the minds of those who have dealt with, or had knowledge of the firm, that certain persons continue to compose it. Now, so far as mere strangers are concerned, it is obvious that no such impression can exist, and they cannot be said to give credit to, or place reliance on, a person of whom they are ignorant. If, however, a former partner willingly suffers his name to appear as still belonging to the firm from which he has retired, as for instance, in the title of the firm over the door of the shop or store, he will be held liable to any one who, by his conduct in this particular, has been misled into giving credit to the firm of which he continues an ostensible member, and this will be the case, whether notice be given by publication or not. Some of the authorities hold, that public notice of dissolution is necessary even as to strangers. But the doctrine I have stated, is that maintained by Judge Story, and also Chancellor Kent; (Sto. Part., § 160; 3 Kent's Com., 68,) and has heretofore received the approval of this court. (Pope vs. Risley, 23 Mo., 185.)

The refusal of the court below to conform its instructions to this view of the law, must therefore be regarded as erroneous.

2nd.—The evidence in this case by no means tends to show that the plaintiffs, prior to advancing the money, ever knew that Rawlings was a member of the firm to which they gave credit; nor does the fact of his being a partner appear to have been so notorious as to give rise to the presumption that they must have known it. (Carter vs. Whalley, 1 B. & Ad., 11; 3 Kent, 68.) Under such circumstances, plaintiffs must be deemed strangers in the strictest sense of the term.

3rd.—It was perfectly competent for plaintiffs to offer in evidence the petition which the attorney of Rawlings, at the latter's instance, had filed in the suit against Pennison; and this wholly regardless of the question, whether Rawlings had ever seen the petition after it was drawn up, or not?

The act of the attorney was the act of the defendant, and any admissions contained in the petition, could be received against, and be binding upon him. "Thus where a carrier brought trover against a person, to whom he had delivered the goods intrusted to him, and which were lost, the record in this suit was held admissible for the owner, in a subsequent action brought by him against the carrier, as amounting to a confession in a court of record, that he had the plaintiff's goods." (1 Greenlf. Ev., §§ 195, 527.)

4th.—There was error in admitting the testimony of Dowzelot in reference to the statements of Pennison, in May or June, 1872. And for this reason, while the partnership continues, the declarations or admissions of each of the partners made in respect to the business of the firm, will bind it. But upon the occurrence of a dissolution, this power to bind the firm by either acts or declarations comes to an end. (Greenlf. Ev., § 112; Sto. on Part., §§ 107, 323; 3 Kent, 50; Pope vs. Risley, 23 Mo., 185). The chief point at issue in the case was, whether the partnership of Rawlings with Pennison had continued down to a certain time. To prove this continued existence however, the mere declarations of Pennison, were as incompetent as though offered to establish the original formation of the partnership. Pennison was a competent witness, and his statements made outside of the above

mentioned limits, had no greater force nor effect than the unsworn statements of any one else.

5th.—There was error also, in the action of the court in the instruction given to the jury after they had returned and reported their inability to agree: But the error consisted in the form of the instruction, and not in the time at which it was given. There may be instances when it will become the imperative duty of a court to rectify some omission, or cure some oversight, by giving to a jury under the circumstances I have mentioned, an additional instruction.

Judgment reversed and cause remanded; Judge Lewis not sitting, the other judges concur.