CHOUTEAU, *Appellant*, v. JUPITER IRON WORKS.

1. Contract: ABANDONMENT. A written contract may be rescinded or abandoned by parol.

2. ———— : ————. It is not necessary to show an express agreement to that effect, but the agreement to rescind may be inferred from the acts and declarations of the parties.

3. ———— : ————. And in determining whether a party has given his consent to a rescission, it is proper to inquire whether it was to his interest to do so.

4. ———— : DAMAGES : EVIDENCE. In an action for damages for refusal to allow plaintiff to operate the iron works of defendant according to contract, evidence as to the actual output of the works in question during a year, for which damages are claimed, was properly admitted in connection with other evidence going to show the difference between the fuel and ores specified in the contract, and those used for the year 1880, as well as the difference that would make in the production of the furnace.

5. Evidence, Admission of Improper : WHEN NOT REVERSIBLE ERROR. Where all the substantial facts are fully developed by the evidence, the admission of other evidence which is incompetent, but which the jurors could see was of no value, will not constitute reversible error. And this is especially true, where it appears that the incompetent evidence was before the jury before any specific objection was made to it, and no motion was made to exclude it.

6. Contract: DAMAGES : EVIDENCE. In an action for damages against defendant, because of refusal to allow plaintiff to operate its works according to contract, where the latter contained a provision, that, should it be necessary to bank up the furnace, the defendant was to pay the wages of such men as would be actually required to care for the furnace, evidence was properly received that iron works in that locality were at times compelled to close up by reason of the usual incidents and vicissitudes of the business.

7. ———— : ———— : ————. It was proper to take account of such matters in determining the probable working days of the furnace.

8. Contract, Abandonment of : QUESTION FOR JURY. It was for the jury to say, from all the circumstances in evidence in this case, whether there had been an abandonment of the contract sued on.

Chouteau v. Jupiter Iron Works.

9. ——— : ———— : INSTRUCTIONS. It was proper for the court to refuse to confine the time of the abandonment of the contract to a time prior to that when the work of preparing the furnace to go into blast was suspended ; the answer not confining the alleged rescission to that time, and the time for commencing the work under the contract being optional with defendant.

10. Practice : INSTRUCTIONS AFTER JURY HAVE RETIRED. ·It is error for the trial court, although at the request of a retired jury, to send to them in their room additional instructions without the knowledge of the parties to the suit, and without an opportunity of their being heard.

*Appeal from St. Louis City Circuit Court.*—HON. A. M. THAYER, Judge.

REVERSED AND REMANDED.

*S. Herman* and *Hitchcock, Madill & Finkelnburg* for appellants.

(1) Where a case has been decided by the appellate court, and is again taken up by appeal or writ of error, only such questions will be noticed as were not determined in the previous decision. Whatever was passed upon in the former opinion will be deemed *res adjudicata,* and no longer open to dispute. *Chambers v. Smith,* 30 Mo. 156 ; *Overall v. Ellis,* 38 Mo. 209 ; *Bank v. Taylor,* 62 Mo. 338 ; *Hamilton v. Marks,* 63 Mo. 167 ; *Gaines v. Fender,* 82 Mo. 497. (2) It is the duty of the court to construe a written contract ; and that is so, whether the contract is to be construed by its written terms only, or by arriving at the interpretation by examining the terms of the instrument in the light of surrounding circumstances. *San Antonio v. Lewis,* 9 Tex. 69 ; *Goddard v. Foster,* 17 Wall. 142 ; *Smith v. Faulkner,* 12 Gray 251 ; *Thomas v. Thomas,* 15 B. Mon. 178 ; *Whittlesy v. Kellogg,* 28 Mo. 404 ; *Falls River Co. v. Broderick,* 12 Mo. App. 378 ; *Railroad v.*

*Jurey*, 111 U. S. 592. (3) After a cause has been argued and committed to the jury, it is error for the court to hold any communications, whether written or oral, with the jury, whether these communications are in the form of instructions, or any other form, without the full assent of parties or their counsel. If additional instructions are given, an opportunity should be afforded the parties to reargue the cause, if they so determine. *Norton v. Dorsey*, 65 Mo. 377; *State v. Alexander*, 66 Mo. 163; *Dowzelot v. Rawlings*, 58 Mo. 78; *Cluskey v. St. Louis*, 50 Mo. 89; *Burns v. Wilson*, 1 Mo. App. 179; *Scott v. Haynes*, 12 Mo. App. 596; *Fox v. Union Depot Co.*, 7 Mo. App. 593; *Chinn v. Davis*, 21 Mo. App. 365; *Sargent v. Roberts*, 1 Pick. 341; *O' Connor v. Guthrie*, 11 Iowa, 80; *Bank v. Mix*, 51 N. Y. 558; *Kirk v. State*, 13 Ohio, 513; *Read v. Cambridge*, 124 Mass. 568; Thompson on Juries, 419–425; *Crabtree v. Hazenbau*, 23 Ill. 349; *Taylor v. Betsford*, 13 Johns. 487. (4) An instruction which assumes the existence of a fact, concerning which there is no evidence, is erroneous, although it may state correctly an abstract proposition of law. *Lester v. Railroad*, 60 Mo. 268; *Condon v. Railroad*, 78 Mo. 574; *Utley v. Tolfree*, 77 Mo. 309; *Bowen v. Railroad*, 75 Mo. 428; *Skyles v. Bollman*, 85 Mo. 35; *Bank v. Crandall*, 87 Mo. 208. (5) It is proper for the court, in actions involving questions of negligence, the rescission of contracts by the acts of parties, and other similar actions, to point out certain acts of the parties, and instruct the jury as to the legal effect attached by the law to those acts; but it is error to either comment upon any such fact, or to select any one fact, out of several others having the same legal complexion, and direct to it the special attention of the jury. *Rothschild v. Insurance Co.*, 62 Mo. 360; *Forrester v. Moore*, 77 Mo. 660; *Chouteau v. Iron Works*, 83 Mo. 73; *Riggins v. Railroad*, 73 Mo. 598; *Dewitt v. Railroad*, 50 Mo. 304; *Henry v. Bassett*, 75 Mo. 95.

*Boyle, Adams & McKeighan* for respondent.

(1) Facts existing antecedent to the execution of a written contract which show the original purpose and consideration of the contract, coupled with proof of the knowledge of such facts on the part of the parties to the contract, are relevant and competent evidence when taken in connection and linked with acts and occurrences after the execution of the contract, on an issue concerning the abandonment of that contract, and are not in any proper sense to be considered as modifying or altering the terms of the written contract, which were undisputed and not an issue in the case. *Edwards v. Smith*, 63 Mo. 119 ; *Taylor v. Shouse*, 73 Mo. 361 ; *Budd v. Hoffheimer*, 52 Mo. 297 ; *Coughlin v. Haeussler*, 50 Mo. 126. An abandonment of a contract by mutual consent of the parties may be proved by proof of the acts, declarations, conduct, circumstances, and facts surrounding the parties, from which a mutual agreement to abandon may fairly be inferred, and even slight circumstances will be sufficient to show assent to such abandonment. *Fine v. Rogers*, 15 Mo. 321 ; *Henry v. Bassett*, 75 Mo. 95 ; *Chouteau v. Iron Works*, 83 Mo. 73. (2) Any rulings of the court on the admission of evidence or in giving or refusing instructions relating exclusively to the issue of abandonment in this case, even if erroneous, have not injured the plaintiff, and have not materially affected the merits of this action, because the issue of abandonment was found in favor of the plaintiff. Harmless errors or those not affecting the merits of the action present no ground for reversal. *Branger v. Chevalier*, 9 Cal. 353 ; R. S., sec. 3775 ; *Huskins v. Railroad*, 58 Mo. 302 ; *Filley v. McHenry*, 84 Mo. 277 ; *Wright v. McPike*, 70 Mo. 180 ; *State v. Fritterer*, 65 Mo. 422 ; *State v. Christian*, 66 Mo. 138 ; *State v. Barr*, 81 Mo. 108 ; *State v. Kelley*, 85 Mo. 143. (3) When the instructions given

by the court, taken all together, fairly present the issues involved to the jury, the refusal by the court of superfluous instructions, in themselves correct, constitutes no error. *Porter v. Harrison*, 52 Mo. 524; *Henschen v. O'Bannon*, 56 Mo. 289; *O'Neil v. Capelle*, 56 Mo. 296; *Myers v. Railroad*, 59 Mo. 223; *State v. Jump*, 90 Mo. 171; *Keim v. Railroad*, 90 Mo. 314. (4) Unless objections to evidence are specific, and unless the record shows the specific ground on which they are based, they will not be considered by appellate tribunals. *Roussin v. Insurance Co.*, 15 Mo. 244; *Shelton v. Durham*, 76 Mo. 434; *Holmes v. Braidwood*, 81 Mo. 610. (5) There is no reversible error in the action of the trial court in giving the written reply to the written question submitted by the jury after it had gone into retirement. (1) Because the reply of the court was correct in law, and warranted by the facts of the case. (2) Because the reply of the court involved no new or additional proposition which had not been before the argument of the case given to the jury and fully discussed by counsel. (3) Because the reply of the court, taken in connection with the questions of the jury, could work no harm to the plaintiff, for— (a) It related alone to the damages, and the verdict as rendered for nominal damages was the only rational verdict the facts of the case permitted. (b) It was not attended with any secret interviews or any intentional improper action on the part of the court. All that was done was in writing and immediately filed as a paper in the case, subject, in its full scope, to inspection of counsel and to exceptions as to its legality. (c) The questions as put by the jury to the court show that the only concession contemplated by the jury (concerning the propriety of which they asked the instruction of the court) was against defendant, and in favor of the plaintiff. *Dowzelot v. Rawlings*, 58 Mo. 78; *Cluskey v. St. Louis*, 50 Mo. 89; *Norton v. Dorsey*, 65 Mo. 377; *State v. Alexander*, 66 Mo. 163; *State to use*

*v. Smit*, 20 Mo. App. 50; *Shapley v. White*, 6 N. H. 172; *Bassett v. M'f'g Co.*, 28 N. H. 457; *Allen v. Aldrich*, 29 N. H. 63; *Goldsmith v. Solomon*, 2 Strob. (S. C.) 296; *Thuyer v. Van Vleet*, 5 Johns. 111. (4) (*a*) Because the plaintiff and his counsel were present in court and heard the court inform the jury, that if they desired further instructions as to any further point of law to make their request known in writing after retiring to their jury-room, and were silent and took no exception thereto. (*b*) Because after the jury had sent the request, in conformity to the direction of the court, and after the court had written the answer thereto and sent it to the jury-room, one of plaintiff's counsel, before the jury had agreed upon a verdict, knew what had been done by the court, and instead of objecting thereto in time to correct the error, made no objection, but awaited the result in silence. Plaintiff's counsel should have spoken out and made their objection at the time. It is too late to insist upon this irregularity, as an error after verdict, and on motion for new trial. By such conduct plaintiff waived the irregularity if there was such. *State v. Waters*, 62 Mo. 196; *Grove v. City of Kansas*, 75 Mo. 672; *Lewis v. McDaniel*, 82 Mo. 577; *Valentine v. Railroad*, 138 Mass. 28; *Osgoood v. Toole*, 60 N. Y. 469; *Tower v. Moore*, 52 Mo. 118; *Baker v. Rice*, 52 Mo. 23; *State v. Saunders*, 76 Mo. 37.

BLACK, J.—This is a suit to recover damages for the alleged refusal of the defendant to permit the plaintiff to execute a contract which he had with defendant. The defendant is a corporation under the laws of this state. By the terms of the contract, plaintiff was to take charge of and operate the furnace to the best of his ability, furnish the labor, unload the coal, coke, ore, and limestone required by the furnace, and to take the iron from the casthouse. Defendant agreed to furnish such ores as were best adapted for making Bessemer metal, "Big

Muddy Coal," and "Connellsville Coke," the materials going into the furnace and the pig iron coming from the casthouse to be weighed at expense of defendant. Defendant was to pay the plaintiff $2.30 per ton for the iron made. It is further provided · that the contract shall be in full force for one year from the time of lighting the furnace. The contract bears date twenty-seventh of March, 1877. The answer is a general denial, and it sets up an abandonment of the contract by the mutual consent of the parties.

There was a verdict for the plaintiff with nominal damages and he appealed. The errors assigned relate: (1) to the admission of evidence on behalf of the defendant; (2) the exclusion of evidence offered by the plaintiff; (3) refusal to give instructions asked by the plaintiff; (4) giving of instructions by the court of its own motion and at the request of defendant, and (5) communicating with the jury and giving an additional instruction after the cause had been submitted.

The Jupiter was a new furnace, and at the date of the contract in suit had never been in blast. It was located in close proximity to the Vulcan Iron Works, which had three furnaces and machinery for making Bessemer steel rails. Plaintiff, his father, and the Garrisons owned the stock of the Jupiter, and the principal stockholders of that corporation were also shareholders in the Vulcan. The principal object of making the contract in suit, and of then starting the Jupiter, was to furnish pig iron for the Vulcan, and this was well known to all of the contracting parties. There is evidence tending to show that in view of getting the contract, plaintiff agreed to furnish the money necessary to put the Jupiter in working order, and to superintend the work. Some expressions of the witnesses, detached from their other evidence, tend to show that plaintiff's services in this behalf had no connection with the contract in suit, but the weight of the evidence shows that he rendered them

without pay in view of the contract. He, through his father, furnished the money and put the Jupiter in order, and in May, 1877, this work was completed, with the exception of the erection of one boiler, not yet made. The money advanced was repaid to plaintiff's father in the fall of 1877.

In May, 1877, the iron market declined, the machinery of the Vulcan proved to be defective for manufacturing Bessemer rails; that company became financially embarrassed, and in October, 1877, closed down, and, as a consequence, the Jupiter did not begin operations. Both furnaces remained closed until November, 1879, when the Jupiter was leased to the Vulcan for five years from first of December, 1879, and under that lease was, for the first time, put in blast. There is no evidence of a formal cancellation of the contract between the plaintiff and the defendant, but there is much evidence, consisting in part of the declarations of plaintiff, tending to show a full and complete abandonment of the contract, before the Jupiter was leased to the Vulcan. The details of this evidence need not be given.

1. There can be no doubt that a written contract may be rescinded or abandoned by parol. It is not necessary to show an express agreement to that effect, but the agreement to rescind may be inferred from the acts and declarations of the parties. In determining whether a party gave his consent to a rescission, it is proper to inquire whether it was to his interest to do so. *Fine v. Rogers*, 15 Mo. 316. And so, too, we may look to the object and purposes had in view when making the original contract, and in doing this, the parties are not confined to the original contract. The rescission is, in effect, a new contract, putting an end to an existing one, and any fact, constituting a link in the chain of circumstances, is competent evidence. It was, therefore, proper for the defendant to show that it was understood by the parties to the contract that the product of the Jupiter was to

be used by the Vulcan, and especially in view of the other evidence, that the Vulcan converting works became disabled, and could not consume the pig iron made by the Jupiter.

2. There was no error in receiving evidence of the actual output of the Jupiter, in 1880, for the purpose of disclosing its productive capacity. This evidence was objected to because it was not at the same time shown that the fuel and ores used were the same as specified in the contract; but the court, at the same time, ruled that any difference in this respect could be shown, as well as the difference it would make in the production. The Jupiter was a new untried furnace, one of the largest in the country, being $20\frac{3}{4}$ feet in the bosh and some 75 feet in height. The year 1880 is the one for which damages are claimed, and evidence of what the furnace did produce explained by evidence of the difference in the ores and fuel used and agreed to be used, was vastly more valuable than any expert evidence that could be produced. When the facts can be detailed so as to be understood and applied to the subject of inquiry, they are always to be preferred to expert evidence.

3. The evidence that the plaintiff received dividends on his stock arising from the lease of the Jupiter to the Vulcan might well have been rejected; for he was entitled to the dividends, whether arising from the lease, the operation of the furnace by the company, or under his contract. There was no real inconsistency between his receipt of the dividends and his claim set up to the contract. But we are of the opinion the reception of this evidence does not constitute reversible error. The evidence as to the substantial facts was fully developed, and the jurors could have had no trouble in seeing that this evidence was of no value. Besides all this, the evidence was before the jury before any specific objection was made to it, and it does not appear that any motion was made to exclude it.

4. There was evidence offered and received, over the objections of the defendant, to the effect that the furnaces at Carondelet were sometimes compelled to close up, because of the difficulty of getting and keeping on hand a full supply of coke of the kind specified in the contract. The defendant could, of course, make a contract binding itself to keep on hand a constant supply of fuel, but it is not so stated in the contract. The contract is in very general terms, but it does provide that, "should it be necessary to bank up the furnace, the Jupiter Iron Company to pay the wages of such men as may be actually required to care for the furnace." This provision, considered in the light of the general terms of the contract, shows that stoppages were contemplated, and no specific reason therefor being given, it must have reference to the usual vicissitudes and incidents that interrupt operations of the furnaces in the locality of the Jupiter. It was proper to take account of such matters in determining the probable working days of the furnace.

5. The plaintiff, by his witness, Mr. Perry, instituted a comparison between the productive capacity of the Jupiter and No. 3 furnace of the Vulcan, and then asked him whether the facilities of the Vulcan, that is, her machinery and apparatus, were better than those of the Jupiter, which evidence was excluded. The size and productive capacity of the Vulcan had been given, and the character of her machinery was disclosed by more specific evidence. The facts were in evidence from which the jury could make the deduction sought to be shown by the witness, and there is no reversible error in the ruling of the court. Other objections are made to the admission and exclusion of evidence, which have not been overlooked. We think they are not well taken.

6. As to the instructions: Complaint is made of the refusal of the court to give the plaintiff's second instruction, which in substance told the jury that the

written contract was the only evidence of what was agreed upon, and nothing could be considered as a part of that contract not embraced therein. In this connection it is said that it is the duty of the court to construe written contracts, and of this there can be no doubt; but this instruction does not undertake to construe the written contract. We have seen that the contract contemplated stoppages, and that they were such as were incident to the business, and it was, therefore, competent to show the extent of those interruptions in the usual course of the business in question. Besides this, under the instructions given, the jury were bound to find for plaintiff, unless they found an abandonment of the contract, and the plaintiff's instruction, as to the measure of damages, was given. The court, by the instructions given, after stating that an abandonment of the contract by the mutual consent of the parties might be shown by the acts and declarations of the parties, and that the burden of proof of that issue was on the defendant, proceeds to say: "And to abrogate or rescind a contract by mutual consent requires a meeting of the minds of the contracting parties; and, unless you find that the minds of the parties met on the fact of rescinding or abrogating the contract, you cannot find that a rescission of the contract took place. And while you may infer a rescission of the contract from the acts and conduct of the parties, yet such acts and conduct must be clear and unequivocal, and not referable to any other fact than a giving up of the contract by consent of both parties. The mere fact, if you find such to be the fact, that plaintiff assented to defendant's not lighting the furnace in the spring of 1877, would not, of itself, authorize you to draw the conclusion that he thereby abandoned the contract, and his rights thereunder, to run the furnace after it was lighted."

This instruction and another one, which was refused,

show that the court declined to confine an abandonment to a time prior to that when the work of preparing the furnace to go into blast was suspended. In this there was no error, for the answer does not confine the alleged rescission to that time. It is true · the answer, in one place, after setting out the delay of three years and the reasons therefor, states that, in view of these facts and in reference to them, and prior to the time plaintiff was to begin work, the parties by agreement abandoned the contract. But the time of commencing work under the contract was optional with the defendant, and so the court told the jury. The answer further states that, thereafter, the parties by mutual agreement abandoned the contract. It is clear that the alleged rescission is not, by the pleadings, confined to any particular date. The court did not recite facts which the evidence tended to establish, and say if those facts were true, they amounted to a rescission. It had no right to thus instruct the jury, and it would have been error to have done so. It was for the jury to say whether there had been an abandonment of the contract, and to do this from all the circumstances in evidence. For this reason plaintiff's sixth instruction was properly refused. It collates some facts which the evidence tended to establish, omitting essential ones, and from the facts thus collated directed a verdict for the plaintiff, if found to be true. Possibly a case may arise where a rescission may be said to flow, as a matter of law, from one or more facts, and the jury might be so instructed ; but that is not the case here. The question is, what was the understanding of the parties, and that is to be determined from all the evidence. All this is in perfect accord with what was said when this case was here before. *Chouteau v. Jupiter Iron Works*, 83 Mo. 73.

It is not always the duty of the court, even in cases of negligence, to say whether given facts do or do not amount to negligence. It is often the duty of the jury

to make the deduction, and that, too, though the detailed facts are undisputed. *Huhn v. Railroad*, 92 Mo. 450. It was certainly to the plaintiff's benefit to have the jury told that the mere fact that plaintiff assented to defendant's not lighting the furnace in the spring of 1877 would not authorize the jury to conclude that he thereby abandoned the contract. This was quite proper in view of the terms of the contract. The court went on to say, by another instruction, that the assent, if proved, might be considered with the other facts in the case, and we see no error in this. The instructions, as a whole, presented this case fairly to the jury, and favorably for the plaintiff, and it is wholly immaterial that others might have been given, or that those given might have been couched in different language.

6. After a trial, lasting about four days, the cause was submitted to the jury at two o'clock in the afternoon. The jurors were unable to agree on that day, and so reported to the court. They were discharged until the next day, with the usual caution. Upon the opening of the court for that day, the jurors took their seats, and the court inquired whether their difficulty in reaching a verdict arose from matters of fact or law. One juror answered, from matter of law, and another, from matter of fact. A third desired to state the point of difference, but counsel not being willing that he should do so, the jurors were sent to their room with instructions from the court that if they desired further instructions, as to any point of law, to make their request known in writing after retiring to their room. Thus far counsel for both parties were present and heard what was said. The court was not adjourned, but the judge left the bench and went to his room, which is described as being a part of the courtroom. Counsel for both sides left the courtroom.

In three-quarters of an hour from the time the jurors went to their room, they addressed two written notes to

Chouteau v. Jupiter Iron Works.

the judge, the first asking him if it would be consistent for the jurors, who were in favor of the defendant, to consent to a verdict for plaintiff for a nominal sum; and the second being a report that they could not agree. To these communications, the judge made no answer. Subsequently, and while the judge was in his room and counsel were absent, the jurors wrote out the following question and sent it to the judge by the bailiff: "Would it be consistent with the instructions of the court to find for plaintiff with nominal damages?" To which the judge in writing made the following answer, and sent it and the question to the jury-room by the bailiff: "It would be consistent to find nominal damages, provided the jury are of the opinion, from the evidence, that there was no substantial damages sustained by the plaintiff in consequence of the breach of the contract, if there was a breach." Within half an hour the jury returned a verdict for plaintiff with one cent damages. After the additional instruction had been sent to the jury and before they returned with the verdict, one of the attorneys for plaintiff returned to the courtroom, and, upon making some inquiry of the clerk, was, by him, informed that the jury had sent in a question to the court which had been answered, or that the jury had sent in a request for further instructions, and that they had been given. Aside from this, counsel knew nothing of what had transpired.

Many courts of last resort, in the United States, have held that communications ought not to take place between the judge and jury, after the cause has been submitted to them, except in open court, and, if practicable in the presence of counsel in the cause. In *State v. Patterson*, 45 Vt. 308, the jury, while considering of their verdict, sent a written inquiry to the presiding judge, who, while the court was in session, made an answer thereto, relating to the law of the case, and sent

this and the statutes to the jury-room. In respect of this the court said: " The prevailing idea in this state has been, that all communications between judge and jury, after a case has been submitted to the jury, and while they have it in consideration, should be in open court, and, so far as we know, the practice has been conformable to this idea."

In the case of *Bank v. Mix*, 51 N. Y. 558, the jury, after the cause had been submitted to them and while deliberating, sent to the judge a written inquiry relating to the evidence of a designated witness, to which an answer was made and sent to the jury-room. The judge writing the opinion, with the concurrence of the whole court, says: "It is in my opinion better and safer to adhere to the rule, as affirmed by the adjudged cases, and by what I understand to be the settled usage in this state, that there ought to be no communication between the judge and the jury, after they have gone from the bar to consider of their verdict, in relation to the oral evidence or his instructions to them, unless it take place openly in court, or with the express assent of the parties."

In the case of *O'Connor v. Guthrie*, 11 Iowa, 80, after the jury had retired, the judge, in answer to a written inquiry from them, sent them by the bailiff an instruction material to the determination of the case. This was done without the knowledge of either party. The court said: " That the court erred in the particular complained of, we entertain no doubt. If further instructions are to be given to the jury, though the same in principle as those previously given, the parties have a right to require that they shall be given in open court, that an opportunity may be afforded to know what they are, except to them if desired, and ask others explanatory if deemed necessary. Indeed, the necessity for adhering to this practice with strictness is so manifest that argument in support of it is quite unnecessary. It may at

times, it is true, be attended with inconvenience, but better so than to permit a practice so liable to abuse and so much in conflict with the rights of parties litigant." The same doctrine has been asserted in many other cases under a variety of circumstances. *Campbell v. Beckett,* 8 Ohio St. 210 ; *Crabtree v. Hagenbaugh,* 23 Ill. 349 ; *Hoberg v. State,* 3 Minn. 262 ; *Sargent v. Roberts,* 1 Pick. 337. A different rule prevails in New Hampshire and South Carolina. In those states it is held the court may communicate with the jury after its adjournment, upon their request, so far as to give them instructions upon matters of law, and this, though counsel of the parties are not present. *Bassett v. Salisbury,* 28 N. H. 457 ; *Goldsmith v. Solomon,* 2 Strob. 296.

In the case of *State v. Alexander,* 66 Mo. 148, one of the jurors, after they had retired, sent a note to the judge, asking him a question in respect to the law of the case, to which the judge replied, "see instructions 10, 11, and 12." There were other elements in that case, not to be found in this one ; but the practice of communicating with the jury, except in open court and in the presence of the parties or their attorneys, was condemned in strong terms. This doctrine was again asserted in the case of *Norton v. Dorsey,* 65 Mo. 376. It must be concluded that this court has put itself in line with the courts first before mentioned upon this question.

We have been impressed with these facts in this case, that, aside from the question under consideration, the cause was well tried ; that it is the second trial ; that there is an abundance of evidence from which the jury might have found that the plaintiff sustained no substantial damage, even if the contract had not been rescinded ; and that the action of the court was with the best intention, so conceded on all hands. It is the province and duty of the trial court to aid the jury by giving them proper instructions, and if they do not understand the instructions given, or if some point about

which they should be instructed has been overlooked, or some mistake made in the instructions given, the jury may be called to the bar of the court and proper instructions may be given.   This is but a common-sense view of the matter, and so, in part, at least, it was held in *Dowzelot v. Rawlings*, 58 Mo. 75.

But to sustain this verdict we must say that a court in session may, at the request of a retired jury, send to them in their room additional instructions, without the knowledge of the parties litigant, or their attorneys, and without an opportunity of being heard.   This we cannot do without opening wide the door to abuses that must follow in the train of such a precedent.   Our statute contemplates that all instructions to the jury will be given in open court with an opportunity to counsel to be heard, and take exceptions, if they like, to such as are given, and the practice is to do this at the time, or the objection will be of no avail when the case comes here for review.   It is true the court told the jury to make their requests known in writing, if they desired further instructions.   This was said in the presence of the attorneys for the plaintiff, and no exception was taken.   We do not see that there was anything to which to make a valid objection.   It was no notice that the jurors would receive instructions otherwise than at the bar of the court and in the usual way.

From a patient consideration of this case, we feel in duty bound to reverse the judgment and remand the cause, and it is so ordered.   Ray, J., absent.  The other judges concur.