THE STATE OF MISSOURI, Respondent, v. WILLIAM MEAGHER, Appellant.

St. Louis Court of Appeals, May 3, 1892.

1. **Criminal Law:** SALE OF INTOXICATING LIQUORS BY LICENSED DRAMSHOP KEEPER ON SUNDAY: INDICTMENT. An indictment for the sale of intoxicating liquors by a licensed dramshop keeper at his dramshop on a Sunday is good, if it follows the language of the statute in charging the offense.

2. ———: PLEADING IN PROSECUTION FOR MISDEMEANOR. When a defendant, after pleading not guilty to an indictment for a misdemeanor, by leave of court demurs to the indictment, the demurrer has not the effect of withdrawing the plea, and, therefore, the defendant need not enter a new plea after the demurrer is overruled.

3. ———: UNLAWFUL SALE OF INTOXICATING LIQUORS: BURDEN OF PROOF. In order to convict a defendant for the unlawful selling of intoxicating liquors, when the sale is not made by him in person, but by some one else on the defendant's premises, the state must show that the

person making the sale was the agent or employe of the defendant. But, when it appears that the liquor was sold by a person employed by the defendant to sell liquor for him at the particular place, and that the sale took place in violation of the statute, then a *prima facie* case is made out against the defendant, which he must rebut by showing that, in making the sale, his agent acted either without authority or contrary to his orders.

4. ———: KEEPING LICENSED DRAMSHOP OPEN ON SUNDAY: SUFFICIENCY OF THE EVIDENCE. The evidence in this cause is considered, and *held* sufficient to warrant the conviction of the defendant, a licensed dramshop keeper, for keeping his dramshop open and selling intoxicating liquors therein on a Sunday, though he was not present in person.

5. ———: ———: PURPOSE OF DEFENDANT. It is immaterial for wha purpose the defendant in such a cause goes to his dramshop, if he opens the place so that customers can come in, and sells intoxicating liquors there after they have come in on a Sunday.

6. ———: PROSECUTION FOR MISDEMEANOR: INSTRUCTING JURY IN ABSENCE OF DEFENDANT AND HIS COUNSEL. It is error for the trial court in a criminal cause, after the argument of the cause and in the absence of the defendant and his counsel, to give to the jury an additional instruction, though this is done in open court; and a judgment convicting the defendant must be reversed therefor, unless it clearly appears that such additional instruction wrought no prejudice to him. And *held,* that a reversal should result therefrom in this cause, though the additional instruction could properly have been given in the first instance.

*Appeal from the Barry Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

REVERSED AND REMANDED.

*W. C. Cloud,* for appellant.

No brief filed for respondent.

THOMPSON, J.—The defendant, a licensed dramshop keeper, was indicted under section 4590 of the Revised Statutes, for selling intoxicating liquor in his dramshop on Sunday. He was convicted, sentenced to pay a fine of $50, and prosecutes this appeal to this court. So much of the statute as is material is as follows: "Any person having a license as a dramshop

keeper, who shall keep open such dramshop, or shall sell, give away, or otherwise dispose of, or suffer the same to be done upon or about his premises, any intoxicating liquors in any quantity, on the first day of the week, commonly called Sunday, * * * shall, upon conviction thereof, be punished by a fine not less than $50, nor more than $200, shall forfeit such license," etc. The indictment, following the language of the statute, charged that at a day and place named the defendant, "then and there being a dramshop keeper, and having a license to keep a dramshop, did then and there unlawfully and wilfully keep open such dramshop, and sell and give away, and suffer to be sold and given away and otherwise disposed of, upon and about his premises and dramshop intoxicating liquors, to-wit, one glass of whiskey and one glass of beer, on the first day of the week, commonly called Sunday, contrary to the form of the statute," etc.

The state gave evidence by two witnesses tending to show that these two witnesses went into the back door of the defendant's saloon on a certain Sunday, and that one of the witnesses purchased for the sum of ten cents from one Tom Feehan two glasses of beer, which the witnesses drank upon the counter; that the front door was closed, but there were other persons in the saloon besides Feehan, and besides some men who were scrubbing the floor and cleaning the glasses. We do not gather from the testimony of these two witnesses that Feehan was the bar-tender for the defendant, or that he was employed by the defendant in any way; but, if the evidence for the state was defective in this regard, the evidence for the defendant helped it out by showing that Feehan was the regularly employed bartender of the defendant, having general charge of the saloon; that Feehan had been tending bar for the defendant for a long time, and that defendant had

largely given up the business to Feehan to handle for him. On the contrary, the defendant by himself and by Feehan gave evidence tending to show that Feehan was under strict orders not to keep open the saloon and not to sell intoxicating liquor therein on Sunday, but that it was the custom of Feehan, in the discharge of his employment, to go into the place every Sunday for the purpose of cleaning it out,—scrubbing the floors, mirrors, cleansing the glasses, etc.

The errors assigned are: *First*. Failing to sustain a demurrer to the indictment. We overrule this assignment of error with the observation that it is not argued, and that in our opinion the indictment, following as it does the language of the statute, is perfectly good. *Second*. Putting the defendant on trial without a plea being entered. This assignment of error is not borne out by the record. As stated in the printed argument filed by counsel for the defendant, it is that the defendant specifically withdrew his plea of not guilty by leave of the court, in order to file his demurrer to the indictment, which demurrer was afterwards overruled; and upon this premise an argument is built that the overruling of the demurrer did not operate to reinstate the plea of not guilty which had been specifically withdrawn. Unfortunately for this argument the premise on which it proceeds is not borne out by the record. The record shows that, on August 13, 1890, the defendant pleaded not guilty to the indictment, and that afterwards at a subsequent term, to-wit, on the sixteenth day of April, 1891, he demurred to the indictment by leave of the court; but the record does not state that he withdrew his plea of not guilty. It is substantially admitted that, if this had been a prosecution for a felony, the subsequent demurrer to the indictment by leave of the court would not have the effect of withdrawing the plea of not guilty; since, as was held by the supreme court

of this state in *State v. Reeves*, 97 Mo. 672, in felony cases the accused may plead not guilty, and demur to the indictment at the same time, and, upon the indictment being held sufficient in law, he will be triable on his pending plea of not guilty, just as though no demurrer had been interposed. While it is stated, *arguendo*, in that case, that the rule as to felonies in this respect did not cover misdemeanors,—and such upon the authorities cited was the common law,—yet it being the evident policy of our code of criminal procedure to assimilate the rules of procedure and make them uniform in all cases, whether of felony or misdemeanor, as far as practicable, and it being its policy, moreover, that persons who are guilty of public offenses shall not escape punishment upon bare technicalities which have no relation whatever to the merits of their prosecution or defense, we have no difficulty in overruling this assignment of error. If a defendant in a capital case could not successfully avail himself of this technicality it is not perceived on what sound principle he could do so, where he is punishable only by a pecuniary fine and the forfeiture of a privilege.

The third assignment of error questions the action of the trial court in failing to sustain the defendant's demurrer to the evidence. This demurrer was interposed at the close of the plaintiff's evidence, but was not renewed at the close of defendant's evidence. Although the state may have failed to make out a case by the evidence of its own witnesses, so that the court may have committed error in not directing the jury at the close of the state's evidence to acquit the defendant, yet we have seen that the defendant gave evidence supplying the omission of the state's evidence in this respect. While the defendant did not renew this so-called demurrer to the evidence at the close of the whole case, yet, he did in his motion for new trial,

make the assignment that the verdict was against the evidence. We apprehend that this sufficiently challenges the legal effect of the whole evidence, assuming it to be true in so far as it works in favor of the state to justify a conviction.

We are of opinion that the evidence, taken altogether, was sufficient to justify a conviction. The law of this state as to the evidence which is necessary to convict for the unlawful selling of intoxicating liquors, where the sale is not made by the defendant in person, but is made by some one else, in contravention of the statute under which the indictment is framed, in the defendant's dramshop, drug store or other place of business is well-settled. That rule is, on the one hand, that in such a case it is necessary for the state to go farther than merely to show that some one in the defendant's place of business sold the liquor under conditions prohibited by the statute; and that it is necessary to show that the person doing the act was the agent or employe of the defendant. *State v. Baker*, 71 Mo. 475; *State v. Quinn*, 40 Mo. App. 573. In the case last named it was held by this court that evidence, that a person sold a glass of whiskey in the defendant's drug store under conditions prohibited by the statute under which the indictment was drawn, was not sufficient to support a conviction, in the absence of evidence that he was in charge of the store or serving customers, or that he was in the general or temporary employment of the defendant. Such evidence, in the view of this court, was entirely consistent with the conclusion that the act may have been done by an unauthorized and officious person. So, in the case before us, if we were at liberty to suppose that the beer had been sold by one of the men temporarily employed to scrub the floor on the Sunday named, who had not been employed by the defendant for the purpose of selling liquor at all, or

authorized by him so to do, it might be regarded as an officious act, within the doctrine of the last-cited case. But it is settled by a considerable concurrence of judicial decisions in this state that, where the liquor is sold by the persons employed by the defendant to sell liquor for him at the particular place, and the sale takes place in violation of the statute, then a *prima facie* case is made out against the defendant, which he must rebut by showing that, in making the sale, his agent acted either without authority or contrary to his orders. *State v. Baker*, 71 Mo. 475; *State v. Reiley*, 75 Mo. 521; *State v. Heckler*, 81 Mo. 417, 420; *Casey v. State*, 6 Mo. 646; *Town of Kirkwood v. Autenrieth*, 11 Mo. App. 515; *Town of Kirkwood v. Autenrieth*, 21 Mo. App. 73; *State v. Durken*, 23 Mo. App. 387.

In applying the doctrine of these cases to the case before us, it is to be observed that here the statute prohibits the dramshop keeper from keeping his dramshop open, or from selling, giving away or otherwise disposing of, *or suffering the same to be done*, upon or about his premises, any intoxicating liquor, in any quantity, on the first day of the week commonly called Sunday, etc. The statute is in the nature of a police regulation enforced by penal sanctions, imposing upon licensed dramshop keepers the affirmative duty of keeping their dramshops closed on Sunday, and of not selling or giving away or otherwise disposing of any intoxicating liquors therein on that day, or of suffering anyone else to commit the like acts in their dramshops on that day. And this is made a condition upon which the right of retention of his license as a dramshop keeper depends. A dramshop is kept open within the meaning of this statute when the back door of it is left open, so that the public may enter, although the front door is closed. In this case the evidence shows that the two persons, who

procured and drank the beer in the defendant's dram-shop, on the Sunday named, entered through the back door without obstruction or objection from anyone for the purpose of procuring intoxicating liquor therein, which they did procure. This made out a *prima facie* case against the defendant of keeping his dramshop open contrary to the form of the statute, and as charged in the indictment. When the evidence went further, and showed that one of these persons purchased a "treat" for the two, consisting of two glasses of beer, from a man who had long been the defendant's bar-tender in charge of his saloon business there, and to whom he had very largely committed the management of his business, and that this man received pay for the same, and that the beer was drank upon the counter, it made a very clear *prima facie* case against the defendant of selling intoxicating liquor in his dramshop on Sunday contrary to the form of the statute and the charge in the indictment.

To rebut this *prima facie* case, the defendant gave his own evidence and that of his bar-tender, to the effect that the bar-tender was under orders not to open the dramshop on Sunday and not to sell any intoxicating liquors therein. This evidence was delivered from the mouths of interested witnesses; the defendant was strongly interested in not suffering a conviction which would involve a pecuniary fine and the forfeiture of his license as a dramshop keeper; and it may reasonably be presumed that Feehan was interested in preventing the dramshop from being closed, whereby he would lose his situation as the manager of it in the employment of the defendant. It was, therefore, for the jury to say whether or not they would believe the testimony of these witnesses and exonerate the defendant. It is very clear from these observations that the court committed

no error in submitting the case to the jury, and that the verdict is sustained by substantial evidence.

The next assignment of error questions the propriety of all the instructions given at the request of the state. As some of these instructions were undoubtedly good, we have some difficulty in determining the one at which this objection is leveled; but from the argument adduced in support of it we assume it to be the following: "If you find that the bar-tender or clerk of the defendant did, on Sunday, the third day of August, 1890, in Lawrence county, Missouri, sell two glasses of beer to the witnesses in this case, such selling would be the act of the defendant in contemplation of law, and you will convict him of the charge in this indictment in this case, unless you believe said sale was made by said bar-tender or clerk without the knowledge or consent of the defendant; and against his orders and directions given by him to his said clerk or bar-tender." Then followed the usual cautionary instruction in favor of the defendant on the subject of reasonable doubt. The instruction above quoted appears to have been well drawn in conformity with the settled rule of evidence in this state hereinbefore stated.

The next assignment of error relates to the action of the court in refusing certain instructions requested by the defendant. One of these was as follows: "If you believe that the witness, Thomas Feehan, was at defendant's place of business on Sunday, the third day of August, 1890, for the purpose only of cleaning out the saloon, and not for the purpose of selling liquor, and sold the beer mentioned in these instructions, or sold it against the express instructions of the defendant, then you will find the defendant not guilty." This instruction was erroneous in point of law. It authorized the jury to find the defendant not guilty, provided the defendant's bar-tender, who upon the defendant's

own evidence had, in a large degree, the management of the business, merely went to the defendant's place of business on the day named, for the purpose of scrubbing out the place, and not for the purpose of selling liquor. We take it that it was quite immaterial for what purpose he went there, if he opened the place so that customers could come in, and if he sold liquor to them when he was there, and after they had come in, on Sunday. It is to be observed that the other portion of the instruction in regard to his selling it against the express instructions of the defendant is drawn in the alternative, and does not help out the vice of the preceding portion.

The next of these refused instructions is as follows: "The court instructs the jury to find the defendant not guilty, if they believe from the evidence that Thomas Feehan was present at defendant's place of business on the third day of August for the purpose of scrubbing out the same, and not for the purpose of selling liquors, although they may further believe from the evidence that Thomas Feehan did sell the beer on Sunday, provided the jury further believe that the defendant did not authorize liquors to be sold by said Feehan to witnesses Pruitt and Atkinson, or any other person, on this Sunday." This instruction was likewise misleading, because it made the immaterial question of the purpose which Feehan had in going down to the saloon on the Sunday in question a material hypothesis for the jury to consider. In the instruction for the state, above quoted, the court had covered the law of the case, as presented by the evidence, in a manner sufficiently clear and sufficiently favorable both to the state and the accused. Under that instruction the jury could not misunderstand that it was their duty in the premises to acquit the defendant, unless they should find that, in selling the beer to the state's witnesses, Feehan had

The State v. Meagher.

acted without the knowledge or consent or against the orders and directions of the defendant.

The last assignment of error presents the only close question in the case. After being instructed by the court, the jury retired to consider of their verdict at about seven o'clock in the evening. After being out until about noon of the following day, the court had the jury brought into court in the absence of defendant and his counsel, and, without their knowledge or consent, and gave them the following additional instruction: "You are the sole judges of the weight of the evidence and of the credibility of the witnesses; and, if you believe that any witness has testified wilfully false as to any material fact in the case, you are at liberty to disregard any part or the whole of the testimony of such witness. In determining the amount of credit to be given any witness, you may take into consideration his or their relation to the case, and the interest they may have in the result of the trial." To this the defendant by his counsel excepted as soon as he saw the instruction, which was after the jury had agreed upon their verdict, and returned the instruction with their verdict into court.

We believe that it is a general rule of procedure, *where not modified by statute*, that it lies within the sound discretion of the trial court to recall the jury at any time during their deliberations, and to give them any additional instructions which in the judgment of the court the case may require, though there is a mass of authority, which we need not cite, to the effect that the judge cannot give the jury supplemental instructions in the form of sending such instructions in writing to their room—the principle being that, when he gives them further instructions, or otherwise communicates with them, except to inquire whether they have agreed upon their verdict, he must do it *in open court* where

the counsel for the parties have an opportunity to be present and take such action in reference to the action of the court as to them may seem proper; and, further, that, in such a case, it is not obligatory upon the court to send for the parties or their counsel, but that, if they wish to be present on such occasions, it is their duty to remain in court. At the same time it is conceded that the courts ought to endeavor, as matter of proper courtesy, at least, to secure the attendance of counsel before reinstructing the jury. In *Chapman v. Railroad*, 26 Wis. 295; s. c., 7 Am. Rep. 81, it was ruled that where, after the jury have retired to consider of their verdict, they come into court and desire information on a particular point, and the court thereupon, conforming to their desire, gives them an instruction in writing, in the absence of the unsuccessful party and his counsel, and without sending for them, no error is committed. The court hold that it is a matter of grace or favor on the part of the trial court to send for the absent party or his counsel, and not a legal obligation or duty. This decision has been followed by the supreme court of New York in *Cornish v. Graff*, 36 Hun, 160; and in New Hampshire and South Carolina it has been held that the judge may communicate with the jury after the adjournment of the court upon their request, so far as to give them instructions upon matters of law, although counsel are absent, without affording ground for a new trial. *Bassett v. Salisbury*, 28 N. H. 457; *Goldsmith v. Solomons*, 2 Strobh. (S. C.) 296. On the other hand, in California, where the practice is regulated by statute, the rule is different. *Redman v. Gulnac*, 5 Cal. 148 (civil case); *People v. Trim*, 37 Cal. 276 (criminal case).

In this state the subject is obviously influenced by the statute, which requires the court to instruct the jury in writing, on motion of either party, before the

The State v. Meagher.

case is argued or submitted to them. In *Burns v. Wilson*, 1 Mo. App. 179, after the argument and submission of the cause, the court upon a request from the jury gave them an additional instruction, the defendant, against whom their verdict was subsequently rendered, objecting and excepting to the action. This court, proceeding on the view that this was a deprivation of the right of the defendant, through his counsel, to *argue* to the jury the application of the proposition of law contained in this instruction to the facts of the case, held that it was error, and could not say that the error was not prejudicial as the instruction was not set out in the bill of exceptions. In that case the counsel of the objecting party appears to have been present when the additional instruction was given, and does not appear to have preferred any request to the court to be allowed to make an additional argument upon the application to the evidence of the proposition of law contained in that instruction; and in framing his bill of exceptions he did not see fit to embody the instruction therein. I am prepared to say for myself that that case was not well. decided, and that I would not agree to follow it. It is the duty of the appellant to show not only error, but prejudicial error; and where he sees fit to omit something from his bill of exceptions, which, if inserted therein, might show that the error complained of was merely technical and not prejudicial, I am prepared to say for myself that he does not show a right to a reversal of the judgment. I am further of opinion that, where the counsel for the complaining party is in court at the time when an additional instruction is given, it cannot be regarded that the giving of it deprives him of the right of argument conceded to him by the statute, unless he requests the right of making an additional argument.

In *Chinn v. Davis*, 21 Mo. App. 363, the trial court

held a communication with the foreman of the jury, the latter having come into the court for the purpose, leaving his fellows in the jury room, to which they had retired to consider of their verdict. This communication was held in a whisper, and was inaudible to the counsel who represented the unsuccessful party. As the successful party made no effort to show, by the affidavit of the foreman of the jury or otherwise, what this communication was, it was held that the legal suspicion which attached to it had not been removed, and that a new trial must be granted. But it is perceived that that case falls within the numerous class of cases already spoken of, which relate to *secret communications* between the judge and the jury, which are generally held ground of new trial.

In *Chouteau v. Iron Works*, 94 Mo. 388, 400, a new trial was ordered because of a communication between the judge and the jury, which took place neither in open court nor in the presence of the parties, but in the room of the judge. The circumstances attending it are thus stated by BLACK, J., in giving the opinion of the court: "After a trial, lasting about four days, the cause was submitted to the jury at two o'clock in the afternoon. The jurors were unable to agree on that day, and so reported to the court. They were discharged until the next day, with the usual caution. Upon the opening of the court for that day, the jurors took their seats, and the court inquired whether their difficulty in reaching a verdict arose from matters of fact or law. One juror answered, from matter of law, and another from matter of fact. The third desired to state the point of difference, but, counsel not being willing that he should do so, the jurors were sent to their room with instructions from the court that if they desired further instructions, as to any point of law, to make their request known in

writing after retiring to their room. Thus far counsel for both parties were present and heard what was said. The court was not adjourned, but the judge left the bench and went to his room, which is described as being a part of the court room. Counsel for both sides left the court room. In three quarters of an hour from the time the jurors went to their room, they addressed two written notes to the judge, the first asking him if it would be consistent for the jurors, who were in favor of the defendant, to consent to a verdict for plaintiff for a nominal sum; and the second being a report that they could not agree. To these communications, the judge made no answer. Subsequently, and while the judge was in his room and counsel were absent, the jurors wrote out the following questions and sent it to the judge by the bailiff: 'Would it be consistent with the instructions of the court to find for plaintiff with nominal damage?' To which the judge in writing made the following answer, and sent it and the question to the jury room by the bailiff: 'It would be consistent to find nominal damages, provided the jury are of the opinion, from the evidence, that there was no substantial damage sustained by the plaintiff in consequence of the breach of the contract, if there was a breach.' Within half an hour the jury returned a verdict for plaintiff with one cent damages. After the additional instruction had been sent to the jury, and before they returned with their verdict, one of the attorneys for the plaintiff returned to the court room, and, upon making some inquiry of the clerk, was by him informed that the jury had sent in a question to the court which had been answered, or that the jury had sent in a request for further instructions, and that they had been given. Aside from this, counsel knew nothing of what had transpired." Although the court, aside from this

irregularity, regarded the case as having been well tried, although it was a second trial, although there was substantial evidence from which the jury might have found that the plaintiff sustained no substantial damage; and although it was conceded that the action of the court was done with the best intention, yet the supreme court felt bound to reverse the judgment and order a new trial. BLACK, J., made these pertinent observations: "It is the province and duty of the trial court to aid the jury by giving them proper instructions; and if they do not understand the instructions given, or if some point about which they should be instructed has been overlooked, or some mistake made in the instructions given, the jury may be called to the bar of the court and proper instructions may be given. This is but a common-sense view of the matter, and so, in part, at least, it was held in *Dowzelot v. Rawlings*, 58 Mo. 75. But to sustain this verdict we must say that a court in session may, at the request of a retired jury, send to them in their room additional instructions without the knowledge of the parties litigant, or their attorneys, and without an opportunity of being heard. This we cannot do without opening wide the door to abuses that must follow in the train of such a precedent. Our statute contemplates that all instructions to the jury will be given in open court with an opportunity to counsel to be heard, and take exceptions, if they like, to such as are given, and the practice is to do this at the time, or the objection will be of no avail when the case comes here for review." 94 Mo. 403, 404.

In *Dowzelot v. Rawlings*, referred to by BLACK, J., in the quotation just made, the supreme court of this state said that "there may be instances when it will become the imperative duty of a court to rectify some omission, or cure some oversight, by giving to the jury an additional instruction  *  *  * after their retire-

ment.'' The circumstances, under which the jury were recalled and the additional instruction given in the last-named case, are not set out in the report or the opinion. It was merely held that there was no error in the act of recalling the jury and giving them the instruction, though there was error in the form of the instruction itself. 58 Mo. 78. A similar ruling was made by the supreme court in the earlier case of *Cluskey v. St. Louis*, 50 Mo. 89, where, after the close of the argument, the court, at the request of the defendant, who was afterwards successful, withdrew, by an instruction, from the jury a written contract which had been put in evidence. The supreme court held it no error for which a new trial could be granted, saying that the withdrawal ''could have done the plaintiff no harm,—if it had any effect at all, it was in his favor.''

These are all civil cases. In *State v. Alexander*, 66 Mo. 148, the defendant was put upon trial under an indictment for murder in the first degree, and the judge held certain *private communications* with the jurors, which the supreme court rebuked in strong language, holding that that constituted ground for new trial. Among other things, one of the jury sent a note to the judge containing this inquiry: ''Will the law apply in this case as in dueling?'' The judge wrote on the note: ''See instructions 10, 11 and 12,'' and sent it by the bailiff to the jury. The judge made other private communications with members of the jury, which we need not specify. It is perceived that this case rests upon the footing of private communications made between the judge and particular jurors, and the observation of the supreme court seems to have been well warranted, that ''the jury are the triers of the facts, and the court has no more right to interfere with them while considering of their verdict, except in open court to discharge them from time to time, or, in the presence of the

accused or his counsel, to instruct them as to the law of the case, than the jury have to invade the province of the court." 66 Mo. 164. In *Norton v. Dorsey*, 65 Mo. 376, the report does not show whether the prosecution was for a felony or a misdemeanor. The case was tried before a special judge. After the jury retired to consider of their verdict, the special judge "called the jury into the court room, a little after dark in the evening, and in the absence of the parties and their attorneys, and all other persons being excluded from the court room except the deputy sheriff," gave to the jury additional instructions, which were embodied in the bill of exceptions." This was held ground for new trial. The court, speaking through HENRY, J., and referring to its decision in the case last cited, said: "This question was before us at the present term in the case of *State v. Alexander*, and we held that such conduct on the part of the court was a sufficient ground for reversing its judgment. The court should never, even in open court, in the absence of the parties and their attorneys, when it is practicable to have them present, give additional instructions or modify those already given. No reason is shown, why in this instance it was done in their absence, and the fact stated in the bill of exceptions, that all persons except the deputy sheriff were excluded from the court room, excites suspicion, which, in its conduct, the court should be careful to prevent from attaching to its proceedings." It further appeared that the court refused to sign a bill of exceptions containing the above statement, and that such a bill was signed by bystanders under the statute.

From the foregoing decisions of our supreme court we must conclude that the ruling now under consideration is ground for new trial, unless we can plainly see that it wrought no prejudice to the defendant. The

court had already given, when the jury were first instructed, the following cautionary instruction: "The defendant is a competent witness to testify in his own behalf; but the fact that he is the accused party on trial may be considered by you in determining the amount of credit to be given to his testimony." The cautionary instruction, which the court gave on recalling the jury, was one which the court might properly have given in a case of this kind, where more or less doubt attached to the credit of all the witnesses, both those for the state and those for the defendant. *State v. Mix*, 15 Mo. 153; *State v. Dwire*, 25 Mo. 553. The giving of such an instruction has often been approved in this state, and the meaning of it merely is, when applied to the testimony of witnesses in jury trials, that, if any witness has wilfully or intentionally sworn falsely to a material fact in controversy on the trial, the jury are at liberty, if they shall think proper, to reject the whole of his testimony, though they are not bound to do so, but may give to it such weight as they think it is entitled to. *Gillett v. Wimer*, 23 Mo. 77; *Kelly v. Express Co.*, 45 Mo. 428; *Paulette v. Brown*, 40 Mo. 52; *Brown v. Railroad*, 66 Mo. 588; *State v. Gee*, 85 Mo. 647. It is a cautionary instruction which is very commonly given in jury trials in other jurisdictions. A limitation upon the giving of it is, that it is error to single out a particular witness, and to direct such a cautionary instruction, although couched in proper terms, against his testimony. The reason is that such a course tends to convey to the minds of the jurors the impression that the testimony of the particular witness is disbelieved by the judge, and is to be disregarded, which question is within their province, and not within his. *State v. Stout*, 31 Mo. 406; *State v. Cushing*, 29 Mo. 215, 217. This is especially true, where there is nothing in the testimony of the particu-

lar witness which requires such a caution. *State v. McDevitt*, 69 Iowa, 549.

As the instruction in this case did not single out the testimony of any particular witness, and direct the caution to that, but as the jury might have regarded it as applying to the testimony of either of the witnesses for the state, or to that of either of the witnesses for the defense, there is some difficulty in seeing in what manner the defendant could have been prejudiced by the giving of it. If it had been given with the other instructions, and he had saved an exception thereto, the exception would have been unavailing, for there would have been no error; from which we must conclude that the mere fact, that it was given when he and his counsel were out of court, so that they did not have an opportunity to except to it at the time, does not show that the defendant sustained any prejudice through the giving of it. But it did give information to the jurors of a rule, which they were at liberty to apply in resolving the doubts which had evidently arisen in their minds in regard to the credibility of the witnesses. The giving of such an instruction is not at all obligatory upon the court, even in a criminal case, without request; and, where it is given, the fact that it is given, may materially influence the course of argument which counsel may wish to make upon the facts before the jury. We can hardly understand that so important an instruction could be given to the jury after the argument had been closed without reopening to the defendant, upon request, his right of again arguing the facts to the jury in the light of the instructions; but, as he was out of court when it was given, he had no opportunity to prefer such a request.

In all cases of felony it is absolutely essential that the accused should be present in court at every stage of the trial, and that the record should affirmatively show

that fact. *State v. Smith*, 90 Mo. 37; *State v. Barnett*, 63 Mo. 300; *State v. Able*, 65 Mo. 37; *State v. Dooley*, 64 Mo. 146; *State v. Barnes*, 59 Mo. 154; *State v. Hoffman*, 78 Mo. 256. In such a case, our supreme court, affirming the power of the trial court to give the jury additional instructions, when they returned into court, in open court and in presence of counsel for the defendant, have held that, "in the absence of any showing to the contrary, if such presence were necessary, it will be presumed that the trial court did its duty, and that the accused was present." This refers to the personal presence of the accused, and not merely to his right to be present either by himself or counsel. While the rule is not so strict in cases of misdemeanor as to require the personal presence of the accused, where the punishment does not extend to imprisonment (*State v. Geiger*, 45 Mo. App. 111; *In re Miller*, 44 Mo. App. 125; *State v. Glassner*, 7 Mo. App. 572); yet, even in such cases, he must be present at least by attorney. In view of this principle; in view of the above expressions of our supreme court on the subject of the judge holding communications with the jury in the absence of counsel; and in view of the provisions of our statute, which gives the right of argument to the jury after the instructions have been given to them, we must, on the whole, conclude that the court committed error in this case in giving the jury the additional instruction in the absence of the defendant and his counsel, and we accordingly reverse the judgment and remand the case. It is so ordered. All the judges concur.