MARY S. BERST, Appellant, v. W. J. MOXOM et al., Respondents.

Springfield Court of Appeals, April 1, 1912.

1. **WILLS: Proof of Execution: Undue Influence: Setting Aside: Sufficiency of Evidence.** In an action to set aside a will on the grounds that said will had not been properly executed and had also been procured by undue influence, the evidence is examined and *held* sufficient to take the case to the jury on all contended points, and that the issues were properly submitted by the instructions.

2. **————: ————: Attestation: Sufficiency of Evidence.** Where a will was dictated by the testator and one of the subscribing witnesses testified that the will, as probated, was in the identical language of the testator, and that when the will was finished the testator signed it in the presence of the two witnesses, and the witness that wrote the will and signed it, handed it to the other with the request that he sign it as a witness, and all this took place in the presence of the testator, *held*, that if the testator was a man of sound mind he must have known that he was writing a will and that the law required the will to be witnessed and that such evidence met the statutory requirements so far as the formal execution of the will was concerned.

3. **PRACTICE: Judge Communicating With Jury in Jury Room: Reversible Error.** In a civil action to set aside a will after the same had been submitted to the jury and after the counsel for the parties had left the city, the jury were unable to

agree and at their request the judge went to the jury room, where some of the jurymen attempted to get an expression from him as to the proper construction of certain instructions. The judge refused to give them any opinion in regard to their questions, but gave them a three-fourths instruction in writing and subsequently the jury returned a verdict, signed by nine of their number. *Held*, that notwithstanding the judge acted with the best intentions, his conduct in communicating with the jury in the jury room was reversible error.

4. ———: ———: ———. Any communications in the jury room between the judge and jury in the absence and without the consent of counsel after the jurors have retired to consider the issues, is reversible error.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED.

*Wright Bros.* for appellant.

(1) Burden of proving the instrument rests upon defendants. They are required to show the testator was of lawful age and of sound mind, as well as the due execution of the will. Harris v. Hays, 53 Mo. 96; Holton v. Cochran, 208 Mo. 410; Mowry v. Norman, 204 Mo. 189; Cowan v. Shaver, 197 Mo. 212. (2) Ordinarily burden of showing undue influence rests upon plaintiff, but if fiduciary relation established or some confidential relation between defendants and testator, then the burden shifts. The presence of a relation of confidence and trust alone will raise a presumption of undue influence. Mowry v. Norman, 204 Mo. 189; Bradford v. Blossom, 207 Mo. 230; Maddox v. Maddox, 114 Mo. 46; Dingman v. Romine, 141 Mo. 475. (3) In contest the probate of the will must be made in solemn form. Cash v. Lust, 142 Mo. 637; Teckenbrook v. McLaughlin, 209 Mo. 538; Benoist v. Murvin, 48 Mo. 54. (4) Undue influence cannot ordinarily be proved by direct evidence, but may be shown and inferred by facts and circumstances, as

well as by the will itself and its provisions. Dansman v. Rankin, 189 Mo. 703; Gay v. Gillilan, 92 Mo. 264; Roberts v. Bartlett, 190 Mo. 701. (5) The action of the court in entering the jury room and giving additional instructions and making statements was prejudicial and error. Rankin v. Patton, 65 Mo. 377; State v. Alexander, 66 Mo. 163.

*H. H. Ball* and *Moon & Moon* for respondents.

(1) The legal execution of the will was properly proved in the manner provided by our law. R. S. 1909, sec. 558; Berst v. Moxom, 138 S. W. 74; Craig v. Craig, 156 Mo. 358; Mays v. Mays, 114 Mo. 541; Lindsey v. Stephens, 129 S. W. 645; Hughes v. Rader, 183 Mo. 700; Bridewell v. Swank, 84 Mo. 471. (2) The burden of showing a conspiracy among the respondents to defraud the contestant by unduly influencing the testator in the making of his will rests on the contestant. Tuebert v. Brockmeyer, 138 S. W. 92; Gibony v. Foster, 130 S. W. 342. (3) There is not sufficient evidence of fiduciary relationship existing between the testator and the respondents, or any of them, to warrant the shifting of the burden of proof as to the question of fraud. Gibony v. Foster, 130 S. W. 314; Berst v. Moxom, 138 S. W. 74; Winn v. Grier, 117 S. W. 59; Teckenbrock v. McLaughlin, 209 Mo. 533. (4) Not essential to the validity of a will that it be read to the testator before he signs it. R. S. 1909, sec. 537; Berst v. Moxom, 138 S. W. 74. (5) Not essential to the validity of a will that the testator take actual possession of the same after its execution. R. S. 1909, sec. 537. (6) Not error for trial court to give an additional instruction to the jury in writing in the absence of counsel, when it is not practicable to have them present. Rankin v. Patten, 65 Mo. 163.

GRAY, J.—This cause was in this court on a former appeal, and is reported in 157 Mo. App. 342, 138

S. W. 74, and for a statement of the facts, reference is made thereto.

At the trial from which this appeal was taken, the jury returned a verdict in favor of the defendants, and plaintiff appealed. The cause was reversed and remanded on the former appeal, because the defendants failed to produce the testimony of one of the attesting witnesses. At the last trial, the witness was produced and his testimony given.

The appellant's first assignment of error is, that the proof of the execution of the will was insufficient, and that the court, on account thereof, should have declared, as a matter of law, that plaintiff was entitled to recover.

The original will was produced, and the signatures of the testator and the subscribing witnesses thereto established beyond question. The testimony showed that the will was written by a Mr. Davis, one of the subscribing witnesses, and in the presence of the testator and the other attesting witness. Mr. Davis was dead, but did not die until after the will had been probated in the probate court of Wright county. As the subscribing witnesses lived in Greene county, a commission was issued to a notary public of Greene county, and the testimony of Mr. Davis, relating to the execution of the will, was taken and filed with the will. At the trial, the will was offered in evidence, together with the testimony of the deceased witness, Davis, stating that he was present and saw the testator sign the instrument and heard him publish and declare the same to be his last will and testament, and that at the time of signing the same, he was of sound and disposing mind, and that the witnesses subscribed their names to the will as witnesses thereto, in the presence of the testator and of each other, and at the request of the testator.

The witness, Gustafson, testified that he was present with the other subscribing witness, Mr. Davis,

Berst v. Moxom.

when the testator made and signed the will; that the signatures to the will were those of the testator, the deceased witness, Davis, and his own; that Mr. Davis wrote the will and at Davis' request he witnessed it; that it was dictated by the testator; that the testator stated what he wanted written and that his daughter repeated after him, so that Davis could hear; that he had examined the will and that to the best of his knowledge it was in the exact language of the testator given at the time the will was written. The witness testified he did not read the will over, nor was it read to or by the testator after it had been written; that he was not personally acquainted with the testator, and never had met him until he went to the house to witness the will; that the testator seemed to understand what he had and to whom he wanted to leave it.

In addition to the testimony of this witness, several other witnesses testified, including the physician who had been treating the testator, and who visited him the night the will was written, that the testator, while aged and weak, and suffering from his disease, was a man of strong determination, and that he was of sound mind and knew what he was doing at all times. There was some testimony to the contrary, but the testimony was abundant to take the case to the jury on the question of the sufficiency of the testator's mind and capacity to make a will.

Our statute requires that every will shall be in writing, signed by the testator, or by some other person by his direction, in his presence, and attested by two or three competent witnesses subscribing their names to the will, in the presence of the testator. The will and proof of the same met this statutory requirement in every particular, and so far as the formal execution of the will is concerned, the evidence was sufficient. In a contest, however, there must be additional proof, to-wit, testamentary capacity and a request by the testator that his will be attested. We have held

that there was proof of testamentary capacity, and there was sufficient testimony to take the case to the jury that the testator requested that his will be attested. When the will was executed, the testator dictated it, and one of the subscribing witnesses testified that the will, as probated, was in the identical language of the testator. When the will was finished, the testator signed it in the presence of the two witnesses, and the witness that wrote the will signed it and handed it to the other, with the request that he sign it as a witness. All of this took place in the presence of the testator, and if he was a man of sound mind, he must have known that he was writing a will, and that the law required the will to be witnessed, and as the two witnesses signed it in his presence, he must have known that they had done so.

In Martin v. Bowdern, 158 Mo. 379, 59 S. W. 227, the Supreme Court said: "Mr. Gast, one of the witnesses, says the draughtsman, Mr. Gerst, asked him to sign it. He knew it was Reilly's will but did not know its contents, and he signed it in the presence of the testator and in the presence of the other witnesses, at a little table four or five feet from the testator. There was no formal, verbal declaration by the testator in the presence of the witnesses that it was his last will, and no formal, verbal request by him to the witnesses to attest it, but the testator dictated the will, he knew the witnesses were waiting outside of the room to attest it, and that they were called in for that purpose, and in their presence he signed it, and the draughtsman requested the witnesses to attest it. This was a sufficient request to them to do so."

In Hughes v. Rader, 183 Mo. 630, 82 S. W. 32, the Supreme Court held, where the evidence showed witnesses were present for the purpose of attesting a will, that the will was prepared in the presence of the testatrix who signed it, and it was then passed to a table in

the same room where it was signed by the subscribing witnesses in the presence of the testatrix, that such acts constituted in effect a request from the testatrix for the witnesses to sign the will, and the mere fact that one of the beneficiaries, who drew the will, requested the attendance of the witnesses, and the further fact that the testatrix did not proclaim the paper to be her last will and testament, nor verbally request the witnesses to attest it, were not sufficient to annul the will on the ground of non-compliance with the statute. This case is on all fours with the case under consideration.

In Dunn v. Miller, 8 Mo. App. 458, it is said: "There must be some declaration by the testator that the paper was his will, and a communication made by him to the witnesses that he desires them to attest it as such. But this need not be verbal. An act or a sign is enough. If the scrivener says this to the witnesses in the presence of the testator, it will do."

Without reviewing the evidence at length, it was sufficient in our judgment, to take the case to the jury on all the contested points, and if the instructions properly submitted the issues, the finding of the jury on these issues will not be disturbed.

In regard to the instructions, it is sufficient to say that the appellant, in her brief, has not pointed out any error relating thereto.

In the motion for new trial, appellant alleged that the trial judge entered the jury room while the jurors were deliberating, and orally instructed them on the law of the case, and advised the jury that the instructions did not mean that the testator should have requested the witnesses to sign the will. At the time the bill of exceptions was presented to the judge for his signature, appellant submitted a statement of what she claimed were the facts with reference to the judge entering the jury room, and asked that the same be

163 App.—9

made a part of the bill of exceptions. The request was refused, but the judge made a statement of what did take place, and permitted it to be made a part of the bill of exceptions. It appears from the statement that after the cause had been argued and submitted to the jury, the counsel for the parties left the city and the jury failing to agree, requested the judge to come to the jury room, which he did. On entering the room, he found the jurors in a wrangle, and seemingly some bad feeling. Several of the jurors attempted to get an expression from the judge as to the proper construction of certain instructions. The judge replied that the instructions were plain, and declined to give them any opinion in regard to their questions, but did give them a three-fourths instruction in writing. After some deliberation the jury returned into court a verdict signed by nine of their number, and were discharged. The appellant filed affidavits of two jurors in support of her motion for new trial, but we have disregarded the same.

The question of the right of the judge to visit the jury room, has been before the Supreme Court of this state in several cases. [Ranken v. Patton, 65 Mo. 378; State v. Alexander, 66 Mo. 148; Chouteau v. Jupiter Iron Works, 94 Mo. 388, 7 S. W. 467.]

In the Chouteau case the cause was submitted to the jury in the afternoon, but failing to reach a verdict they were discharged for the day. The next day they appeared in court and it was there determined there was some misunderstanding of the instructions. The judge notified them if they desired further instructions, to make the request known in writing. Counsel for both parties were present and heard what was said. In about an hour after this conversation the jurors addressed two written notes to the judge, the first asking if it would be consistent for the jurors, who were in favor of the defendant, to consent to a verdict for plaintiff in a nominal sum; and the

second being the report that they could not agree. To these communications, the judge did not reply. Subsequently, and while the judge was in his room, and counsel were absent, the jurors wrote the following question and sent it to the judge: "Would it be consistent with the instructions of the court to find for plaintiff with nominal damages?" To which the judge made the following answer in writing: "It would be consistent to find nominal damages, provided the jury are of the opinion, from the evidence, that there was no substantial damages sustained by the plaintiff." Within half an hour the jury returned a verdict for plaintiff with one cent damages. The Supreme Court held the action of the judge reversible error, and cited cases from Vermont, New York, Iowa, Ohio, Illinois and Massachusetts, in support of the opinion, and concluded with the following language: "Aside from the question under consideration, the cause was well tried; that it is the second trial; that there is an abundance of evidence from which the jury might have found that the plaintiff sustained no substantial damage, even if the contract had not been rescinded; and that the action of the court was with the best intention, so conceded on all hands. It is the province and duty of the trial court to aid the jury by giving them proper instructions, and if they do not understand the instructions given, or if some point about which they should be instructed has been overlooked, or some mistake made in the instructions given, the jury may be called to the bar of the court and proper instructions may be given. . . . But to sustain this verdict we must say that a court in session may, at the request of a retired jury, send to them in their room additional instructions, without the knowledge of the parties litigant, or their attorneys, and without an opportunity of being heard. This we cannot do without opening wide the door to abuses that must follow in the train of such a precedent. Our statute contemplates that

all instructions to the jury will be given in open court with an opportunity to counsel to be heard, and take exceptions, if they like, to such as are given. . . . From a patient consideration of this case, we feel in duty bound to reverse the judgment and remand the cause, and it is so ordered.''

In State v. Murphy, 115 N. W. 84, 17 L. R. A. (N. S.) 609, after the jury had retired, they desired to communicate with the judge, who went to where they were confined and rapped on the door, when the following took place: The judge said, ''Good evening, gentlemen. I understand you want to see me. Have you agreed?'' To which the foreman of the jury answered: ''No; I think we cannot agree.'' Whereupon the judge said: ''I will ask you to consider the matter further. Goodnight.'' Whereupon the judge closed the door and returned to his chambers. Thereafter in a short time the jury agreed. It was not claimed that the judge in addressing the jury as ''Good evening,'' and ''Good night,'' was anything more than a salutation, and was not stated in a manner intended or calculated as a threat. The Supreme Court of North Dakota reversed the judgment and said: ''As to the purity of the intentions of the judge in going into the jury room in this case, and there having the brief communication with the jury, no certificate or proof is necessary so far as this court is concerned. . . . That admitted fact, however, does not meet the question before us, which is: Did he do that which was beyond his judicial functions in respect to the case? We are forced to the conclusion that he did. His presence in the jury room for any kind of communication with the jury is not contemplated by any provision of the statute. All communication to the jury in open court is subject to exception by the parties, if deemed improper. If any communication is made to them in the jury room in the absence of the parties, no opportunity is afforded for objections and exceptions at the time. The open

Berst v. Moxom.

court is the place for communications to the jury in the presence of, or on notice to, the attorneys. . . . In this way all distrust and fear that something improper is said or done will be without foundation, and every act be subject to exception and review. . . . A strict compliance with this practice of having all proceedings in court in the presence of counsel, unless waived, is better than to countenance violations thereof unless prejudice is shown. The state urgently insists that no prejudice could have resulted from what was done or said in this case, but we shall not consider that question. . . . It is against the policy of the law to indulge in secret communications or conferences with the jury or with jurors in reference to the merits or law of the case. To determine in each case whether prejudice resulted would be difficult, if not impossible, and justice will be better subserved by avoiding such communications entirely. The authorities are practically unanimous in condemning such communications, and in holding them prejudicial as a matter of law.''

In State v. Wroth, 15 Wash. 621, 47 Pac. 106, the court said: ''In the discharge of his official duties, the place for the judge is on the bench. As to him the law had closed the portals of the jury room, and he may not enter. The appellant was not obliged to follow the judge to the jury room in order to protect his legal rights, or to see that the jury was not influenced by the presence of the judge; and the state cannot be permitted to show what occurred between the judge and the jury at a place where the judge had no right to be, and in regard to which no official record could be made.''

In Havenor v. State, 125 Wis. 444, 104 N. W. 116, the court said: ''These rights are clearly of an important nature, and effect the substance of a jury trial and the right of a party to be heard or to bring in review every transaction of the court's proceedings.

For the attainment of the best administration of justice, the law requiring that all proceedings of courts be open and public, and in the presence of the parties or their representatives, must be strictly enforced; and, in case of any infringement of this policy, parties are not to be put to the burden of showing that it in fact injured them, even though it be manifest that no improper motives prompted the acts complained of.''

In Sargent v. Roberts, 1 Pick. 337, 11 Am. Dec. 185, the court, speaking through its chief justice, Parker, said: ''No communication whatever ought to take place between the judge and the jury, after the cause has been submitted to them, unless in open court. . . . The only sure way to prevent all jealousy and suspicion is to consider the judge as having no control whatever over the case except in open court in the presence of the parties and their counsel. The public interest requires that litigating parties should have nothing to complain of or suspect in the administration of justice, and the convenience of the jurors is of small consideration compared with this great object. . . . It is better that everybody should suffer inconvenience than that a practice should be continued which is capable of abuse, or at least of being the ground of uneasiness and jealousy.''

The authorities on the question are collected in a note to State v. Murphy, in the 17 L. R. A. (N. S.) 609. The author says that any communication between the judge and jury after they have retired to deliberate on the verdict, except in open court, is improper, is well established.

As we construe the opinion of our Supreme Court in Chouteau v. Iron Works, supra, when read with the decisions therein cited with approval, it declares that any communication in the jury room, between the judge and jury, in the absence and without the consent of counsel, after the jurors have retired to

consider the issues, is reversible error, and as that decision is the last expression of our Supreme Court on the question, it must govern our actions herein.

Justice to the trial judge requires us to say that we find he acted with the best intentions, and that we have accepted his statement as to what occurred as absolutely true. And he is to be commended for his frank statement which he permitted to become a part of the bill of exceptions, for without it the matter complained of would not have been before this court for review.

The judgment will be reversed and the cause remanded.

All concur.