MARY SULLIVAN v. UNION ELECTRIC LIGHT & POWER COMPANY, a Corporation, J. E. FELTS and WILLIAM F. SCHULTE, Defendants; UNION ELECTRIC LIGHT & POWER COMPANY and J. E. FELTS, Appellants.—56 S. W. (2d) 97.

Division Two, December 31, 1932.*

---

*NOTE: Opinion filed at April Term, 1932, September 28, 1932; motion for rehearing filed; motion overruled at October Term, December 31, 1932.

*E. C. Hartman, Fordyce, White, Mayne & Williams* and *Frank A. Habig* for appellants.

*Igoe, Carroll, Higgs & Keefe* for respondent.

1070

COOLEY, C.—This is an action brought by Mary Sullivan, plaintiff, to recover damages for the death of her husband, Timothy J. Sullivan, caused, it is alleged, by the negligence of the defendants. Plaintiff recovered judgment for $8,500 against all three defendants, from which defendants Union Electric Light & Power Company and Felts appealed. We shall refer to them as appellants. Schulte did not appeal. Sullivan's death resulted from injuries received in a collision between a Ford coupe owned and driven by defendant Schulte, in which Sullivan was riding as a guest of Schulte, and a truck owned by the Union Electric Company and admittedly being driven in the course of his employment by Felts, its employee and agent. The Ford struck the side of the truck, throwing Sullivan against and his head through the windshield. His throat was cut by the broken glass. It was admitted that he died from the injuries. No claim was made below nor is there here that Sullivan was contributorily negligent. Appellants do contend, however, that the evidence did not make a submissible case of negligence against them.

The collision occurred about five P. M., on September 20, 1927, at the intersection of Cass Avenue and Twentieth Street in St. Louis, Missouri. The day was clear and the streets dry. Cass Avenue runs east and west and was then a main traffic artery of the city, being part of the regular highway from St. Louis to Kansas City. Traffic upon it was usually heavy at five o'clock in the afternoon and according to plaintiff's evidence there was considerable traffic upon it at the time and place here involved. It is approximately fifty feet wide between curbs and carries a double-track street car line, the north track being used by the westbound cars and the south track by the eastbound cars. Twentieth street runs north and south and at the time in question was not so much traveled. It is about forty feet wide between curbs. At the time in question Schulte was going west in Cass Avenue, facing the descending sun which, according to his testimony somewhat impaired his view to his left through the windshield. His Ford was a 1926 model with two-wheel brakes. Felts was going north in Twentieth Street driving a seven-ton Mack

Truck, twenty to twenty-three feet long, loaded with glass, the truck and its load weighing over 25,000 pounds. The foregoing facts are substantially undisputed except that Felts testified he saw no other automobiles on Cass Avenue on this occasion.

Witnesses for plaintiff further testified that Felts, proceeding northward near the east curb of Twentieth Street, approached and without stopping or reducing his speed, drove into the intersection at a speed of about twenty miles an hour across the path of the approaching Ford; that he did not stop or slacken his speed or swerve his truck at any time before the collision; that the Ford struck the right side of the truck about midway of its length; that the truck ran about a hundred and fifty feet after the Ford struck it before stopping; that from a point on Twentieth Street ten feet south of Cass Avenue a person could see clearly for a distance of at least a hundred and fifty feet eastward on Cass Avenue, one witness stating that from the south side of the intersection one could see eastward on Cass Avenue about a block (which would be over three hundred feet). Fred Wirtz, one of plaintiff's witnesses, saw the collision from the window of his residence on the northwest corner of the intersection. He had an unobstructed view. His attention was first attracted by the rumbling of the truck. He saw it when it was fifteen or twenty feet south of the intersection and watched it as it proceeded northward into and across the intersection. Just before the collision his attention was attracted to the Ford by the skidding of its tires on the pavement. He had not previously noticed it. It was then about twenty feet from the point where the collision occurred and traveling at about twenty miles an hour. Unable to stop, it crashed into the right side of the truck with the consequences above indicated. Wirtz did not say just where the truck was when he first saw the Ford.

Another witness for plaintiff, whose attention was also attracted by the noise of the truck as it approached the intersection, corroborated Wirtz as to the speed and movements of the truck above outlined, but from his position he could not see the Ford as it neared and collided with the truck—did not see it before the collision.

Schulte, testifying in his own behalf, said that when he crossed Nineteenth Street, a block east of Twentieth, there were at least a dozen automobiles ahead of him; that he passed a street car going west on Cass Avenue as it slowed down for the Nineteenth Street crossing; that the sun shining through his windshield caused "a black effect on the left," though he could see ahead and could see to the left by turning his head and looking through the window; that as he neared the Twentieth Street intersection he first saw the truck when its front end was two or three feet (on cross-examination

he said it might have been more) south of the south rail of the south or eastbound car track. He estimated that the front end of the truck was then "about fifteen feet or so" from the point where the vehicles would have collided had he not swerved as hereinafter stated. He was unable to give with any degree of accuracy his own location at that moment. First he said he guessed he must have been thirty or forty feet from the truck. Asked on cross-examination how far he was at that time east of the curb line of Twentieth Street, he said: "I imagine I was about fifteen or thirty feet or so, I don't know." He testified that as he proceeded westward from Nineteenth Street and approached Twentieth Street he was driving between fifteen and twenty miles an hour, "not faster than twenty" (he later said he did not know his exact speed and could only approximate it), with the left wheels of his automobile between the rails of the north street car track and the right wheels outside the north rail, which north rail was ten or twelve feet from the north curb of Cass Avenue; that when he saw the truck he applied his brakes—"I started to apply my brakes when I saw he wasn't stopping or even slowing up. I thought I had the right of way which I did, but the fact he didn't slow up, I put on my brakes;" that seeing a collision was imminent and it would be impossible to prevent a collision with the front end of the truck or possibly being run over by it he swerved to the left to try to pass behind the truck but struck it about the right rear wheel. He could not estimate his speed at the moment of impact but said it had been somewhat reduced by the application of the brakes. He was unable to say within what distance he could have stopped under existing conditions but finally hazarded the opinion: "Well, if the wheels would hold, I would say between fifteen and twenty-five feet," but added that the wheels "were sliding on the pavement."

Felts, called by appellants, testified that as he approached Cass Avenue his speed was about twelve miles an hour; that at the south line of the intersection he brought his truck to a full stop (in which statement he was corroborated by other witnesses) and looked both east and west; that he could see for a block or more eastward on Cass; that he saw nothing in the block to the east except a street car which was half a block east of Twentieth; that he did not see the Ford which must have been behind the street car (from all the other evidence it could not then have been behind the street car); that Cass Avenue was a very busy street and it was very unusual for it to be free of traffic at that hour; that after looking and seeing the street clear of approaching traffic he proceeded across the intersection continuing to look out for approaching vehicles as he proceeded; that from his seat in the driver's cab, which was open at the sides, he

could see to either side; that he did not see the Ford at all nor apprehend its approach until he heard its wheels "sliding on the cobblestones" when he saw it for the first time about twelve feet from his truck and almost immediately it hit his truck; that he "pulled on" his emergency brake which, when so pulled on, caught and held in applied position by a ratchet, and sprang from the truck to render assistance if needed; that the truck ran on twenty-five or thirty feet before coming to a stop; that as he crossed the intersection and at the time of the collision he was not traveling to exceed eight miles an hour; that the reason the truck did not stop sooner after he applied the brake was that in his haste he must have failed to pull the brake lever back fully; that at twelve miles an hour he could have stopped the truck in four or five feet and at eight miles an hour in one and a half or two feet; that at the moment of impact the rear of his truck was about three feet north of the north rail of the westbound car track and the actual collision was north of said north rail.

Paul J. Pensot, the motorman of the street car, called by appellants, testified that the Ford passed his street car about three hundred feet east of Twentieth Street; that it was then traveling about twenty-five miles an hour and maintained that speed, remaining ahead of the street car which was traveling about twelve miles an hour; that when the collision occurred the street car was about a hundred and fifty feet east of Twentieth Street.

Appellants also offered evidence tending to prove that the truck was equipped with a governor which made it impossible for it to run faster than fifteen miles per hour.

I. That Schulte, the driver of the Ford car, was negligent may be conceded. The jury so found and there is ample evidence in the record to sustain that finding. Contributory negligence on the part of deceased was not pleaded or proved and is not in the case. Since Felts' relationship to his coappellant as its servant is conceded, the only question we have to consider in determining the propriety of the trial court's action in overruling appellants' demurrer to the evidence is whether or not there is any substantial evidence in the case upon which to base a finding that Felts was guilty of negligence which caused or contributed to cause the collision and the consequent death of Sullivan. ▮ It is too well settled to require citation of authorities that in determining that question plaintiff is entitled to have the evidence considered in the light most favorable to her, including anything in defendants' evidence that may aid her case. So considering the evidence it appears to us clear that plaintiff made a case for the jury.

It is conceded that Cass Avenue was a much traveled street at the time of day and place of the collision, as Felts knew. He himself testified it was "very unusual" not to find automobiles traveling it at that time and place. Such traffic was to be expected. Under those conditions if Felts drove into and proceeded to cross the intersection at the speed indicated by plaintiff's evidence without looking to see whether or not vehicles were approaching on Cass Avenue, such conduct was negligence. That conclusion we think is not debatable. There was evidence from which the jury might find that he did not look. He said he did but he testified also that he did not see the Ford until it was *within twelve feet of his truck* at which time his attention was attracted to it by the sound of its wheels sliding on the pavement. He suggested it must have been behind the street car. Pensot and Schulte testified that the Ford passed the street car three hundred feet or more east of Twentieth Street and was continuously thereafter in front of it. Pensot said that when the collision occurred the street car was a hundred and fifty feet east of Twentieth street. All the evidence in the case on that point, unless it be Felts' guess that the Ford must have been behind the street car, which an analysis of his own testimony as a whole discredits, shows that the Ford was not hidden from his view by the street car *or by anything else* as it approached the intersection. The view eastward on Cass Avenue from the south side of the intersection and from a point ten feet or so farther south on Twentieth Street was unobstructed. To look was to see. If Felts looked he must have seen. Therefore the jury might well find from his failure to see, if a fact, and from his conduct at the time, that he negligently failed to look.

On the other hand, if he did see the approaching Ford when in the exercise of due care he should have seen it, his conduct was equally negligent. While the respective rates of speed of the two vehicles were estimated by witnesses, as is usual in such cases, and not given with mathematical exactness, it is fairly inferable from the evidence that the two vehicles approached the point at which their paths would cross at rates of speed such that it must have been apparent to both drivers, had they been exercising due care, that there was danger of a collision if each held unyieldingly to his course and speed. Each was unobservant, or if observant, heedless of the approach of the other until too late to avert the collision. It is apparent from the evidence that Schulte did not apply his brakes until quite near the truck, too near to permit him to stop without striking it. If Felts was observing him as he should have been it must have been apparent to him as Schulte neared his line of travel and until Schulte applied his brakes that the latter was oblivious

of the near and dangerous approach of the truck or did not realize the danger and, in any event, meant to go on. Felts testified that at the rate he was going he could have stopped within a few feet. He made no effort to do so. ■ It does not absolve him from the charge of negligence to say that he had the right of way because he reached and entered the intersection first. Granting that such is the fact it cannot be permitted to justify him in going relentlessly on if it was or should have been apparent to him that in so doing he endangered the lives of others. The law on this point is well stated in Hammond v. Emery-Bird-Thayer D. G. Co. (Mo.), 240 S. W. 170, in which case the plaintiff's truck was struck by that of the defendant in a street intersection. The plaintiff had the statutory right of way but the court in holding him guilty of contributory negligence said:

"Was plaintiff himself guilty of contributory negligence, barring his recovery? We think he was. While it is true that plaintiff legally had the right of way to pass in front of the defendant, he being first upon the crossing, still, in view of the rule of law that all men must exercise the degree of care in handling dangerous agencies which all prudent men would exercise under the circumstances, and in view of the frequency and calamitous results of automobile collisions, plaintiff's legal right of way did not free him from negligence, if he tried to exercise that right, and pass in front of the defendant, after he discovered, or could by the exercise of care commensurate with the danger in the situation, have discovered that defendant intended to pass in front of him (especially if invited to do so by plaintiff stopping or starting to stop his car), and there would likely be a collision." [240 S. W. l. c. 173. See, also, Thompson v. Smith (Mo.), 253 S. W. 1023, 1027-8; Mitchell v. Brown (Mo. App.), 190 S. W. 354; Benzel v. Anishanzlin (Mo. App.), 297 S. W. 180.]

■ Appellants, without conceding that plaintiff's evidence, if true, whether aided by that of defendant or not, makes a submissible case, contend that it falls within the rule announced in such cases as Roseman v. United Rys. Co. (Mo. App.), 251 S. W. 104, and others cited, to the effect that when testimony of a witness is contrary to physical facts or is inherently impossible or so opposed to all reasonable probability as to be manifestly false, courts will not give it credence but will disregard it. We have stated the facts from plaintiff's standpoint rather than that of defendants as becomes the consideration of the evidence in determining a demurrer thereto. Without detailing the evidence in appellant's favor it is sufficient to say that it does not bring the case within the application of the rule above indicated. It presents simply a conflict of evidence the weight of which was properly left to the jury. The demurrer was correctly ruled.

■ II. Complaint is made of plaintiff's Instruction No. 1. The part thereof referring to appellants reads:

"The court instructs you that if you find from the evidence that defendant Felts, operating the truck of defendant Union Electric Light and Power Company northwardly across Cass Avenue at Twentieth Street, drove said truck across the path of the Ford coupe referred to in the evidence while the latter was so close and running at such speed that driving the said truck across before it created danger of collision between said vehicles (if you find that such are the facts); and if you further find that in so driving said truck in front of said Ford defendant Felts failed to exercise due care to avoid the collision and, further, that such failure on his part to exercise due care (if you find that he did so fail) directly caused, or contributed to cause, the collision described in the evidence, then your verdict should be in favor of the plaintiff and against both the defendants Felts and the defendant Union Electric Light and Power Company, provided you further find that plaintiff was the wife of Timothy J. Sullivan at the time of his death. . . .

"You are further instructed that by the terms due care, as used in this instruction, is meant the highest degree of care, which is that degree of care which a very prudent person would exercise under the same or similar circumstances."

The part omitted in the above quotation refers solely to defendant Schulte.

Appellants say this instruction "was too general, misleading, confusing, and gave to the jury a roving commission to determine questions of liability whether pleaded or not, and . . . improperly charged these defendants with a higher degree of care than that complained of in the amended petition," and that it submitted questions not pleaded nor proved.

One of the general specifications of negligence in the amended petition was that Felts "negligently attempted to and did drive said motor truck across said Cass Avenue and directly in front of the vehicle in which said Timothy J. Sullivan was riding, although said defendant saw, or in the exercise of ordinary care could have seen, that said motor vehicle was approaching the intersection at such speed and in such proximity thereto, that to attempt to cross before it would create great hazard of collision."

It will be seen that the negligence which the instruction was designed to submit was pleaded. Whether it was *properly* submitted is the question. The instruction tells the jury in substance that if Felts drove his truck across the path of the Ford while the Ford was so close and running at such speed that driving the truck across its path created danger of collision and that in *so* driving his truck

in front of the Ford Felts failed to exercise due care, etc. Failure to exercise due care is negligence, hence the instruction in effect directs a finding for plaintiff if the jury found that Felts *negligently* drove his truck across the path of the Ford when the latter was so close and running at such speed that driving the truck across its path created danger of collision. It does not authorize a verdict for plaintiff if the jury found merely that Felts failed to exercise due care generally in driving his truck. Such a direction would doubtless be too general, giving the jury a roving commission. This instruction limits or attaches the lack of due care required to be found to the driving of the truck across the path of the Ford in the manner previously specified.

In Tyson v. Bernhard et al., 322 Mo. 633, 17 S. W. (2d) 270, cited by appellants, the criticised instruction directed a verdict for the defendants if the jury found that the driver of the defendants' car was driving same "eastwardly along Lawton Boulevard and that in so doing he was exercising the highest degree of care," etc., predicating certain other facts. The instruction omitted reference to the failure of the driver to give a warning or to stop, which were material issues, submitted by the plaintiff's instructions. It was held that under the circumstances of that case defendants' instruction was misleading "for the jury may have thought the direction was limited to the control of the movement of the car," and further, "if they understood the direction to cover all of the duties of the driver, it invited them to enter a field of conjecture and speculation."

The instruction in the instant case is much more specific than the one condemned in the Tyson case nor do we think it was calculated to mislead the jury.

If the instruction complained of is seriously faulty it is rather in the omission to require specifically a finding that when Felts so drove his truck, if he did so, he knew or should have known that it would likely cause a collision. A somewhat similar instruction was condemned on that ground in Stakelback v. Neff (Mo. App.), 13 S. W. (2d) 575. It was said in that case that the instruction there under review omitted the basic predicate that the defendant had reason to believe a collision would occur unless he took precautionary measures. The instruction in that case, however, did not require the jury to find, as it does in the instant case, that the defendant negligently so drove his car as to create the danger of collision. As above stated, this instruction in effect requires the jury to find that Felts *negligently* drove his truck across the path of the Ford when doing so created danger of a collision. His act could not have been negligently done unless he knew or should have known the danger he thereby created. So the instruction was technically

correct. It was not *misdirection*. It would have been better had it specifically required a finding that Felts knew or should have known that there was danger of a collision. If it was somewhat lacking in precision and definiteness appellants' instructions are open to the same criticism. But read together we think the instructions sufficiently advised the jury.

 There is no merit in the further criticism of this instruction that it held appellants to the highest degree of care whereas the petition charged failure to use ordinary care. The petition charged that Felts *negligently* drove his truck across Cass Avenue, etc. Negligently, as there used, means without the care required of him which under the law in this instance was the highest degree of care. True, the petition further alleges that when he did so he saw or by the exercise of *ordinary* care could have seen the approaching Ford. If he could have seen it in the exercise of ordinary care, *a fortiori* he could have seen it in the exercise of the highest degree of care. [See Tutie v. Kennedy (Mo. App.), 272 S. W. 117, 122.] Moreover, appellants requested and were given an instruction requiring of both drivers the highest degree of care. If there was error in plaintiff's instruction in that regard appellants acquiesced in and adopted it and cannot complain.

III. Appellants allege error in the giving of an Instruction, No. 6, at the request of defendant Schulte, for that it is too general, confusing, misleading, etc. We shall not quote or discuss it because appellants did not in their motions for new trial complain of or refer to that instruction or the court's action in giving it. Therefore that alleged error is not here for review. [Peters v. Kansas City, 324 Mo. 454, 23 S. W. (2d) 1045, 1049; Beebe v. Kansas City, 327 Mo. 67, 34 S. W. (2d) 57, 58.]

 IV. After the jury had retired to the jury room to deliberate one of them sent to the court the following written communication: "Can we recommend a division of damages if verdict is found against both defendants or must we make it merely a total amount?" Whereupon the court, without calling the jury into the courtroom, sent the following further instruction to the jury room by the sheriff: "The jury are instructed that if they find from the evidence against both defendants, they must return their verdict in a total amount against both defendants." The jury later returned the following verdict: "We, the jury in the above cause, find in favor of the plaintiff, on the issues herein joined on the amended petition and against all of the defendants and assess plaintiff's damages in the sum of eighty-five hundred dollars."

It is apparent from the record that the above inquiry was received and the instruction given by the court (as distinguished from the judge of the court) in open court and in the presence of counsel for both sides. Both sides objected and saved exceptions. In their brief here the only ground on which appellants challenge the legal correctness of the instruction is that it is misleading and confusing in that it refers to "both defendants," indicating that there were but two, whereas there were three. And such appears to have been their complaint in their motions for new trial, wherein they charge error in the giving of "erroneous, illegal, improper, misleading and prejudicial instructions" by the court on its own motion, "after the jury had retired to the jury room and had deliberated for some time." If appellants were then complaining that the instruction was sent to the jury room instead of having the jury brought in and the instruction read and delivered to it in open court they did not so state in their motions. In their brief here they make the further point that the action of the court requires a reversal of the judgment even though the instruction was a correct statement of the law.

There were three defendants. But the fortunes of two of them, these appellants, so far as concerns the case, were inseparably linked together. They were as one. Only one of them, Felts, was a personal actor in the events the jury was considering. Doubtless the juror who wrote the inquiry to the court had in mind Felts and Schulte when he referred to "both defendants" and the court in the instruction inadvertently used the same language. That it did not mislead or confuse the jury is apparent from the verdict which was against "all of the defendants." That the instruction was otherwise a correct statement of the law is not disputed.

■ ■ A more serious question inheres in this episode, however. Granting that the instruction was correct does the fact that it was sent to the jury room in the manner indicated instead of being delivered to the jury in the courtroom require a reversal of the judgment? Appellants now insist that it does and cite two cases in support of their contention, viz., Choteau v. Jupiter Iron Works, 94 Mo. 388, 7 S. W. 467, and Berst v. Moxom, 163 Mo. App. 123, 145 S. W. 857. Neither, however, is in point on the facts. In the Choteau case, after counsel for both sides had left the courtroom and the judge had retired to his room, the jurors sent a note to the judge asking certain information in response to which the judge *in the absence of parties and counsel* sent the jury a written reply giving the information requested. This was held to be error requiring reversal, though the case had been otherwise well tried. This court said:

"But, to sustain this verdict, we must say that a court in session may, at the request of a retired jury, send to them in their room additional instructions, without the knowledge of the parties litigant, or their attorneys, and without an opportunity of being heard. This we cannot do without opening wide the door to abuses that must follow in the train of such a precedent. Our statute contemplates that all instructions to the jury will be given in open court with an opportunity to counsel to be heard and take exceptions, if they like, to such as are given, and the practice is to do this at the time, or the objection will be of no avail when the case comes here for review."

In the Berst case, after counsel for the parties had left the city the judge went into the jury room and there communicated with the jurors and gave them an additional instruction, which action was held to be reversible error.

While in each of the above cases there was an important difference in the facts from the case at bar both recognize the principle that in the interests of proper administration of justice there should be no communication between court and jury except in open court and in the presence of the parties. For a resume of the authorities and the reasons for the rule see the two cases above cited and State v. Murphy (N. D.), 17 L. R. A. (N. S.) 609 and note, and Lewis v. Lewis (Mass.), L. R. A. 1915D, 719, and note. In the notes to the above cases reported in the L. R. A. series many authorities are collated. With practical unanimity the courts have said that such communications between court and jury are improper no matter how honest the purpose of the judge. But while they agree as to the impropriety of the practice the holdings are not uniform as to whether it constitutes reversible error where, as in the instant case, there is no suspicion of unfairness, prejudice or misuse of his power on the part of the judge and it is apparent that no prejudice could have resulted to either party. Even in such case some of the decisions hold that the judgment must be reversed; others contra. Our own court has passed upon that question on facts substantially identical with those of the instant case in Glenn v. Hunt, 120 Mo. 330, 342 et seq., 25 S. W. 181. In that case the court noticed Choteau v. Jupiter Iron Works, supra, but held that while in the case before it the action of the trial court was error it was not prejudicial and in view of the statute, now Section 1062, Revised Statutes 1929, prohibiting the reversal of judgments except for error materially affecting the merits of the action, did not justify reversal. As in Glenn v. Hunt, so here, the advice asked by the jury and the instruction given were not in reference to any controverted fact the jury was required to decide. The instruction had reference only to the form of the verdict. The error in question could not have been prejudicial and while such

action should be carefully avoided by trial courts we are not persuaded that under the circumstances here it justifies reversal of the judgment.

■■ V. Appellants contend that the court committed prejudicial error in overruling their objection to a question propounded to Schulte on his cross-examination. After Schulte had attempted with poor success on direct examination to give the relative positions and speeds of the Ford and the truck when he first saw the latter and to describe their proximity to each other, he was asked what he then did and answered that he applied his brakes as he saw the truck was not stopping or "slowing up." "Q. Then what did you do, in the way of turning your car? A. I swerved slightly to the left, *for I saw a collision was imminent and it would be impossible to prevent a collision with the front end of his truck or possibly being run over by the truck,* and I swerved to the left to try to pass behind the truck." (Italics ours.) The foregoing went in without objection or motion to strike out. On cross-examination he again testified about the relative positions, speeds, etc., of the two vehicles when he first saw the truck, again demonstrating that he was unable to state facts describing the situation accurately. Following all that this question was asked: "Now, let me ask you this, if you had gone right on ahead at that time, if you had not applied your brakes at all and gone right straight on ahead, and the truck kept coming like it did, would the truck have hit your Ford?" Appellants objected on the ground that the question called for a conclusion and invaded the province of the jury. The court overruled the objection, appellants excepting, and the witness answered: "I think that the left front fender and the right fender of the truck would have collided."

At first blush we were inclined to think the court's ruling prejudicially erroneous. But after careful consideration and an examination of the authorities we have come to the conclusion that it was not. That the answer called for and given was in the nature of a conclusion or opinion may be conceded. The general rule is that a witness must testify to facts and it is for the jury to draw its conclusions from those facts. But there is a well recognized exception to that general rule. In Scanlon v. Kansas City, 325 Mo. 125, 149, 28 S. W. (2d) 84, 95, this court en banc quoted approvingly from Greenleaf on Evidence that in practice opinions are receivable "from persons who have no special skill but have personally observed the matter in issue, and cannot adequately state or recite the data so fully and accurately as to put the jury completely in the witness's place and enable them equally well to draw the inference."

In Heinbach v. Heinbach, 274 Mo. 301, 316, 202 S. W. 1123, 1127, WHITE, C., speaking for this division, said:

"A nonexpert witness may give his conclusions or deductions when the matter is one which a witness of ordinary intelligence can understand, and such conclusions or deductions of the witness are based upon facts which are incapable of being properly or accurately described by the witness to the jury."

Numerous cases recognizing the principle are cited in the latter opinion.

We think in the circumstances of this case the testimony objected to was properly admitted. The situation about which Schulte was testifying was one naturally difficult to portray accurately, especially as the relative positions of the two vehicles were changing every instant. It is clear the witness was unable to describe the situation so as to enable the jury to understand it accurately otherwise than as he did, by stating the impression produced in his mind by what he had observed at the time. We have examined the cases cited by appellants in support of their contention but considering the facts involved we think they do not conflict with the views above expressed.

 Moreover, if the testimony referred to was objectionable appellants had waived the right to have it excluded by failing to object when similar testimony was given previously. It has been frequently ruled by this court that a party to an action will not be heard to complain of the admission of testimony over his objection, where testimony of the same tenor has been admitted without his objection. [Keyes v. C., & Q. Railroad Co., 326 Mo. 236, 31 S. W. (2d) 50, 62; Laughlin v. K. C. Southern Ry. Co., 275 Mo. 459, 474, ,205 S. W. 3; Gaty v. United Rys. Co. (Mo.), 251 S. W. 61, 64; Chambers v. Chester, 172 Mo. 461, 490, 72 S. W. 904, 913.] Schulte had already testified without objection that at the time in question he saw a collision was imminent and it would be impossible to prevent a collision with the front end of the truck or possibly being run over by it unless he swerved his car, which in substance and effect was the same as the testimony later objected to. We rule this point against appellants.

VI. In their brief, without discussion or citation of authorities, appellants say the verdict is excessive and that the court erred in refusing certain requested withdrawal instructions. We consider these contentions without substantial merit. We think the case was fairly tried and that the verdict is supported by substantial evidence. No prejudicial error appearing in the record the judgment of the circuit court is affirmed. *Westhues* and *Fitzsimmons*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. *White, P. J.,* and *Ellison, J.,* concur; *Henwood, J.,* concurs in result and in all except ruling under Point V that the challenged testimony of the witness Schulte was properly admitted.