# MARCH, 1941.

GEORGE DOUGAN ET AL. RESPONDENTS, v. GUY A. THOMPSON, TRUSTEE FOR MISSOURI PACIFIC RAILROAD COMPANY, A CORPORATION, APPELLANT.—150 S. W. (2d) 518.

Springfield Court of Appeals, April 3, 1941.

*Thomas J. Cole, F. M. McDavid* and *F. W. Barrett* for appellant.

*McPherson & Stemmons* and *Bradshaw & Fields* for respondents.

622

SMITH, J.—This was a suit to recover for loss and damage to two shipments of cattle from LaRussell, Missouri, to East St. Louis, Illinois.

It was filed in the Circuit Court of Lawrence County, Missouri, and was returnable the second Monday in May, 1940. The cause was tried at the September Term, 1940, of said court, on an amended petition, consisting of two counts.

The first count alleged the shipment of three cars of fat steers on July 11, 1938, the same being 75 in number, and shipped to the Wooten Commission Company, East St. Louis, Illinois, for the market. It further alleged that although the steers were well and healthy when loaded, that upon their arrival at East St. Louis, three were found dead, and the others died soon after, and that the remaining 62 were in a greatly depreciated condition, due to the negligent handling, to plaintiffs' damage in the sum of $1809.95. The acts of the defendant, and damage to the plaintiffs were alleged to have been due to negligent delays of said shipment, which exposed said cattle to an excessive heat.

The second count of the said petition was based upon a loss of a shipment of cattle over the same route, made on August 8, 1938. The plaintiffs took an involuntary nonsuit as to the same.

The case went to trial before a jury on the first count of plaintiffs' petition, which resulted in a verdict for the plaintiffs in the full amount asked, and judgment was rendered accordingly. After an unsuccessful motion for a new trial, this appeal was made by the defendant.

It is conceded, that this was an interstate shipment, that the death and damage to the cattle were caused by the extreme and unusual heat at the time, and that the case was submitted only upon the negligent

exposure of the cattle to the extreme heat by reason of negligent delays and the stopping of the train where the cattle were exposed to the extreme heat.

The case is presented to us under three assignments of error. The first assignment is that the court erred in not sustaining the demurrer to the evidence offered at the close of all the evidence; for the reasons which we quote, as follows:

"1. Because this being an interstate shipment, it is governed by the rules and decisions of the Federal Courts.

"2. Since extraordinary hot weather is an act of God, and under Federal decisions, where property is destroyed by an act of God, but would not have been within the range of the destructive forces except for the negligent delay of the carrier, the act of God, rather than the negligent delay, is the proximate cause.

"3. Because plaintiffs' petition states a cause of action for negligence, based on a common-law duty, and since plaintiffs' proof of a contract for shipment consisted solely of a specific written contract, there was a failure of proof.

"4. Because there was no evidence of negligence in placing cattle where they would be exposed, and no evidence that delays or exposure contributed to cause the damage."

This of necessity occasions a consideration of the evidence. It also calls for a consideration of the charging parts of the petition. That part of the petition involved here is as follows:

"2. THAT on the 11th day of July, 1938, plaintiffs delivered to said railroad at Stotts City, Missouri, for shipment to National Stock Yards, Illinois, for a certain paid amount of freight, seventy-five head of fat steers belonging to the plaintiffs; that the same were shipped without a caretaker from Stotts City, Missouri, to National Stock Yards, Illinois, in cars MP-52852, MP-52538 and MP-52997, consigned to Wooten Commission Company, livestock commission merchants, to be by them sold at the opening of the market, and on open market the following day, July 12, 1938, for the account of plaintiffs; and

"3. THAT although said steers when so delivered to said railroad were in sound and healthy condition and free from all disease, yet when said railroad under the direction and operation of said defendant trustee delivered said steers at their destination, three (3) of the steers were found dead in the railroad car and ten (10) others were in such a weakened and damaged condition that they died soon after removal from said railroad car, and the remaining Sixty-two (62) steers were not delivered by defendant to their destination in time to be sold on the market on July 12, 1938, and suffered a thirty (30) pound per head additional shrinkage in weight over what they should have sustained had they been carefully and properly and prudently handled in shipment and were further damaged on account of their appearance in that they were unattractive to buyers, were lank,

624

thin, sore on their feet, and saturated with slush and filth by reason of the careless and negligent manner in which said railroad company, under the direction of said defendant trustee, handled them in shipment, all to plaintiffs' damage in the amount of One thousand, eight hundred and nine dollars and ninety-five cents ($1809.95); and

"4. THAT the death of and damage to said cattle as hereinabove described in paragraph 3 were caused by the careless and negligent acts of the said railroad company under the direction and operation of the defendant trustee and were committed as follows, to-wit:

"(a) The defendant carelessly and negligently failed to deliver said cattle to their destination within a reasonable time after they were turned over to the defendant for shipment.

"(b) The defendant negligently and carelessly permitted said cattle, although known to the defendant to be fat and highly susceptible to heat, to be stopped at various points on defendant's tracks where they were left in said cars in the sun on an exceedingly hot day, by reason of which said cattle were overheated and caused to depreciate in appearance and in value and to sicken and to die.

"(c) The defendant, acting by and through his agent at Stotts City, negligently and carelessly directed the plaintiffs to load said cattle in said cars long in advance of the time when they were removed from Stotts City by the defendant's said train, by reason of which said cattle were left by the defendant in said cars for an unreasonable length of time on an exceedingly hot day and were overheated thereby and caused to sicken and to die.

"WHEREFORE, plaintiffs in this the first count of their amended petition, ask judgment against defendant for the damages which they have sustained on account of defendant's negligence as aforesaid, in the sum of one thousand eight hundred nine dollars and ninety-five cents ($1809.95) together with their costs herein expended."

It was testified by witnesses, and not denied by anyone, that the day the steers were loaded at Stotts City was a very hot day; the temperature being around 104 to 105 degrees. The agent in charge of the station, a witness for defendant, said it was a very hot day. There is no controversy over the fact that it was a hot day.

There is quite a conflict in the evidence as to the time of day these steers were loaded. It is definitely determined that the train left Stotts City at 4:10 P. M. on July 11, 1938. The plaintiffs' witnesses testified that the agent in charge of the station and the stock cars at Stotts City, at about 1 P. M. or a few minutes thereafter, ordered the plaintiffs to load the steers into the three cars if they expected them to be taken out on the next train, and acting under that direction, they were all loaded within a few minutes after being so directed; and the steers remained in the cars and became very hot, or affected by heat before the train started them moving at 4:10 P. M. It was

denied by the defendant that the steers were loaded that long before starting, and witnesses were offered, who testified that the cars were loaded only a few minutes before 4:10 P. M. Under such evidence, it became a question of fact for the jury as to when the steers were loaded, and in considering the demurrer to the evidence, it is our duty to consider all the evidence as to when the cars were loaded, and we find there was evidence that some of the cattle were loaded into the cars and left standing on the sidetrack for approximately three hours before the train left. This court is not to determine whether or not that evidence was true. It is contended by the defendant that the excessive heat caused the cattle to die and become injured, and that such excessive heat was an act of God for which the defendant is not responsible or liable. Much has been said by the courts of many states upon the acts of God; and many states have different holdings as to liability thereunder. We shall not here go into a lengthy discussion as to what constitutes an act of God. It may safely be said that in this State there is no liability on the part of the defendant, if the loss is occasioned solely by an act of God. In an early case in the Supreme Court of this State, that court said, ''The act of God which excuses the carrier must not only be the proximate cause of the loss, but the better opinion is that it must be the sole cause. And where the loss is caused by the act of God, if the negligence of the carrier mingles with it as an active and co-operative cause, he is still responsible.'' [Wolf v. The American Express Co., 43 Mo. 421, l. c. 425.]

The St. Louis Court of Appeals in an early case, Warehouse Co. v. Railroad, 124 Mo. App. 545, at page 560, said:

''Now, it is well-settled law that if the defendant's negligence commingled with and operated as a contributive element proximate to the injury, even though such injury is to some and even a paramount injury, operated by the act of God, the defendant will be liable as though its negligence were the entire and sole cause of the loss. In order for the defendant to escape liability under the exemption afforded by the law to the entailments of an act of God, the act of God must be the sole and only cause of the injury and this too, unmixed with the negligence of the defendant, for if the defendant's negligent act commingled with it in the loss as an active and co-operative element and the loss is proximate thereto, or, in other words, is a reasonable consequence of the negligent act, it is regarded in the law as an act of the carrier rather than as an act of God. The principle is manifest from all of the cases and evidence of its proper application abounds in the books. [Wolf v. Amer. Ex. Co., 43 Mo. 421-425; Davis v. Railroad, 89 Mo. 340; Grier v. Railway, 108 Mo. App. 565; Prince v. St. Louis Cotton Compress Co., 112 Mo. App. 49, 86 S. W. 873; LaMont v. Railway, 9 Heisk. (Tenn.) 58; Moffat Com. Co. v. Railroad, 113 Mo. App. 544.]''

The Springfield Court of Appeals so held in Johnson & Co. v. Ice & Refrigerator Co. in 143 Mo. App. 441, l. c. 456. See, also, the following Missouri cases: Tranbarger v. Railroad Co., 250 Mo. 46, l. c. 57; Harris v. St. L.-S. F. Ry. Co. (Mo. App.), 27 S. W. (2d) 1072, l. c. 1075; Crowell v. St. L.-S. F. Ry. Co. (Mo. App.), 11 S. W. (2d) l. c. 1056.

There was evidence offered by the plaintiff as to the heat of the day; as to the ordering of the loading of the cattle by the agent at Stotts City two or three hours before the train left; also evidence of the lateness of the train in starting with the cattle; also evidence of the heat of the cattle at Butler, Missouri; and that the train got to Pleasant Hill one hour and forty-five minutes late and was delayed in getting out of Pleasant Hill another two hours and thirty-five minutes; and that some of this delay was made up before getting to St. Louis, and that the cattle arrived at National Stock Yards at 9:53, in a sickened and hot condition, some of them being dead at the time, and others died before they could be sold, and those that were not dead were in a weakened condition, and still hot and nervous.

It is our conclusion that the evidence submitted to the jury as to the time of loading of these cattle and the length of time before starting, with the delay in starting, and the delay at stations on the route, was sufficient for the determination of the jury as to whether such acts of the defendant's agents contributed to the act of God, in causing the death and injury to the cattle, and that the trial court did not err in overruling defendant's demurrer to the evidence.

The second assignment is that the court erred in giving, at the request of plaintiffs, instructions numbered 1 and 2. These instructions are as follows:

"The Court instructs the jury that it stands admitted in evidence that the plaintiffs, on the 11th day of July, 1938, delivered to the defendant at Stotts City, Missouri, for shipment to National Stock Yards, Illinois, for a certain paid amount of freight, seventy-five head of fat steers, belonging to the plaintiffs, and that the defendant contracted to transport said cattle.

"Therefore, the Court instructs you that if you find and believe from the evidence that the defendant caused or permitted its train to arrive at Stotts City, Missouri, later than it was regularly scheduled to arrive at Stotts City, and if you further find that the defendant knew that said train would be delayed in arriving at Stotts City, if, in fact, you find it was so delayed, and that, thereafter, between 1:00 and 1:30 P. M. on July 11, 1938, the defendant, with such knowledge, if you find it had such knowledge, carelessly and negligently informed the plaintiff Warren that if plaintiffs desired defendant to transport said cattle on said train, plaintiffs must at once take their cattle from the pens where they had access to feed, water and shade, and must at once load them in defendant's freight cars; and if you

further find that plaintiffs relied upon such instructions, if any, and that plaintiffs did at once load said cattle on defendant's said cars and that the defendant had accepted said cattle for shipment; and if you further find and believe that defendant carelessly and negligently caused or permitted said cars loaded with plaintiffs' cattle, if you find they were so loaded, to remain at the place of loading until after 4:00 o'clock P. M., of that day, exposed to the excessive heat, if any, existing at that time; and if you find and believe from the evidence that said cars on which plaintiffs' cattle were being transported were carelessly and negligently caused or permitted by the defendant to be stopped in transit and said cattle to be exposed for an unreasonable length of time to the excessive heat, if any, existing at the time; and if you further find and believe that by reason of such conduct and acts, if any, of the defendant, three of plaintiffs' said cattle were caused to become overheated and to die as a result thereof in transit and that ten of said cattle were caused to become overheated and to die as a result thereof soon after reaching their destination and that the remaining sixty-two of plaintiffs' said cattle were caused to depreciate in value, then and in that event your verdict will be for the plaintiffs.

### Instruction 2 Given.

"The Court instructs the jury that if you find the issues for the plaintiffs under the other instructions given in this case, then you will assess plaintiffs' damages, if any, at such sum as you find from the evidence to be the reasonable market value at National Stock Yards, Illinois, on July 12, 1938, of the thirteen dead steers referred to in evidence, together with such additional sums, if any, as you may find from the evidence will reasonably compensate plaintiffs for the loss, if any, which you find they have sustained from any shrinkage or depreciation, if any, of said cattle occasioned by the negligence, if any, of the defendant in the transportation of said cattle."

It is insisted that Instruction No. 1 first, permits a recovery without hypothesizing the fact of negligence but leaves the question for speculation; and second:

"Because it is a comment on the evidence, argumentative, and invaded the province of the jury, and is misleading and confusing, in that it fixes the time that the cattle were shown to have been in the cars at Stotts City by one of the plaintiffs, when it was sharply contested, and a different time was shown by the plaintiffs as well as the defendant, and argues that the lot where the cattle were penned was shady, cool, and well supplied with feed and water, and that the stationary cars into which they were loaded were extremely hot. It invaded the province of the jury by fixing the time from 1:10 to 1:30 until 4:00 o'clock as a sufficient exposure to constitute negligence and injury."

We quoted this instruction in full so that it would show for itself its contents, and it is our conclusion that under the evidence given in this case, it is not subject to criticism offered against it, and we rule this point against the defendant.

The complaint directed against Instruction No. 2 is that it authorized a recovery for elements not submitted to the jury, "in that it told them that they could find such 'additional sum' as' would reasonably compensate the plaintiffs for any loss which they might find they have sustained from any shrinkage or depreciation which said cattle sustained, because it permits recovery for the normal shrinkage, and any loss for the entire trip, and any depreciation for the entire trip, and because there was only submitted to the jury such acts of negligence as exposed the cattle to the heat.

"Because this was an action for damages to personal property and this instruction does not give the jury any rule by which that damage may be ascertained."

We think a reading of this instruction will show that it is not subject to the criticism directed against it.

The third and last assignment is as follows:

"The Court erred in permitting witnesses to answer questions over the objections and exceptions of the defendant, as follows:

"1. In that the witness, Harry Dillinger, was asked a hypothetical question as to whether or not the cattle under certain enumerated conditions, would arrive at the market in the damaged condition in which they were found. Among the conditions hypothesized was the assumption that they had been left for two or three hours in the 'hot sun', because there is no evidence that they were left for any length of time in the sun.

"2. The Court erred in admitting in evidence Time Table of this line without first showing that it was the time table as of date of this shipment, in fact, the evidence shows that it was not in force on this date. The same being plaintiff's Exhibit 1."

The abstract before us shows the following with reference to the hypothetical question:

"Q. Now, then, if testimony showed that these steers had been prematurely loaded and permitted to stand in the hot sun in the temperature of 104 or 105 on a siding at Stotts City for a period of two or three hours—

"By MR. BARRETT: Object to that. There is no evidence of that fact.

"By MR. BRADSHAW: I believe our testimony shows that, Your Honor, all the way through.

"By THE COURT: Overruled.

"To which action of the Court in overruling such objection on the part of defendant, the defendant, in open court, by counsel, objected and excepted at the time."

There had been evidence introduced that the cattle were loaded between 1 and 1:30 o'clock that day, and that the temperature was 104 or 105 degrees, and that the cattle stood on the side track until 4:10 P. M. before leaving Stotts City. This evidence had been introduced without objections from the ·defendant. In view of that situation, we should and do hold that the court did not err in overruling this objection. [Frost v. Central Business Men's Ass'n. (Mo. App.), 246 S. W. 628, 630; Buffum v. Woolworth Co. (Mo. App.), 273 S. W. 176, 180; Sullivan v. Light & Power Co., 331 Mo. 1065, 56 S. W. (2d) 97, 104.]

Plaintiff's Exhibit 1 referred to in the second paragraph of this assignment was a time table. We have carefully examined the abstract before us, and do not find where any objection was made on the part of the defendant when this exhibit was introduced. So we hold the point is not properly before us for review. [Lockmoeller v. Kiel (Mo. App.), 137 S. W. (2d) 625, 630.]

This disposes of all the assignments, and finding no reversible errors, the judgment is affirmed. *Fulbright, J.*, concurs; *Blair, P. J.*, not sitting.